VANDER MEER *v.* WEURDING.

1. CORPORATIONS—GUARANTY—LEGAL LIABILITY OF GUARANTORS OF CORPORATE INDEBTEDNESS NOT STOCKHOLDERS NOT DIFFERENT FROM THAT OF STOCKHOLDERS.

   Where the indebtedness of a corporation up to a certain amount, direct or contingent, owing to plaintiffs, was guaranteed by defendants, two of whom were not stockholders, the fact that plaintiffs were allowed a credit of $4,200 in litigation between them and the trustee in bankruptcy regarding the title of certain real property sold by them to the corporation which afterward became bankrupt, *held*, not to reduce the liability of the two guarantors who were not stockholders on the ground that they were but gratuitous guarantors; there being no distinction in the legal liability of defendants.

2. JUDGMENT — RES JUDICATA — DISALLOWANCE OF CLAIM WITHDRAWN ON APPEAL NOT RES JUDICATA.

   In an action on a contract of guaranty of the indebtedness to plaintiffs of a bankrupt corporation, the conclusion of the trial court that the presentation of said claim to the referee in bankruptcy and its disallowance by him was not *res judicata*, was right, where, on appeal to the Federal district court, the claim was withdrawn and the court specifically authorized the bringing of this action.

3. CORPORATIONS—GUARANTY—CONSIDERATION.

   The finding of the trial court that there was sufficient consideration as to all parties, *held*, supported by the proofs.

4. SAME—ULTRA VIRES—CONSENT OF STOCKHOLDERS—ESTOPPEL.

   Where all of the stockholders of a corporation unite in doing what amounts in substance and effect to a corporate action, within its general powers and for its benefit, they and it are thereafter estopped from denying the authority of the corporation in that respect.

5. SAME—ULTRA VIRES—ESTOPPEL—PUBLIC POLICY.

   Where all of the stockholders of a corporation knew of

and consented to the incurring of certain indebtedness, which inured to its benefit, and guaranteed its payment, the doctrine of *ultra vires* is not available as a defense, in an action against the guarantors thereof, although no formal action was taken by it authorizing the incurring of the indebtedness; no question of public policy being involved.

Error to Kent; Dunham (Major L.), J.    Submitted October 12, 1923.    (Docket No. 100.)    Decided May 8, 1924.

Assumpsit by George Vander Meer and another against George Weurding and others as guarantors of certain promissory notes.    Judgment for plaintiffs.    Defendants bring error.    Affirmed.

*Fred P. Geib* and *T. N. Robinson,* for appellants.

*Elvin Swarthout,* for appellees.

STEERE, J.    On March 12, 1923, plaintiffs recovered a judgment in the circuit court of Kent county against all of the above defendants for $7,405.81.    The action was in assumpsit upon two promissory notes of the Moline Milling Company and a guaranty agreement signed by the seven other defendants.    The two promissory notes were in customary form, both dated April 16, 1918, payable to plaintiffs or order, at the Grand Rapids Savings Bank, due six months after date, with interest at six per cent. per annum after maturity, one being for $5,000 and the other for $4,098.81, the latter being a renewal of a former note of the same amount.

The guaranty agreement is as follows:

"George Vander Meer and John Buys, of Grand Rapids, Michigan, are hereby requested to give and continue to the Moline Milling Company credit as they may desire from time to time, and in consideration thereof, we hereby guarantee payment of any in-

debtedness, whether direct or contingent, now or hereafter owing to said George Vander Meer and John Buys by said Moline Milling Company, and agree to indemnify said George Vander Meer and John Buys against any loss thereon, provided, however, said George Vander Meer and John Buys shall in no event collect from the undersigned a greater sum than ten thousand ($10,000) dollars.

"Notice of the acceptance of this guarantee and of any indebtedness at any time covered by the same, is hereby waived. This guaranty shall continue until written notice of the discontinuance thereof shall be received by said George Vander Meer and John Buys. In case of insolvency, bankruptcy or death of one or more signers hereof, it shall continue as to the others, and George Vander Meer and John Buys may give and continue credit hereunder by making loans, renewing notes, or otherwise, unless and until written notice of discontinuance is given by the other signers.

"Dated April 16, 1918, Grand Rapids, Michigan.
(Signed)   "GEORGE WEURDING,
            "R. WEURDING,
            "FRANCES WEURDING,
            "JAS. F. SCHUILING,
            "HENRY DE PREE,
            "JOHN P. LUIDENS,
            "JAMES WEURDING."

Plaintiffs' declaration, filed November 4, 1920, contained both a special and the common counts. Defendants pleaded the general issue with notice of special defenses. The case was not brought to trial until January 30, 1923. Various amounts had been credited on the notes, and the computation of balance due, for which judgment was rendered, is not questioned if the notes were valid and any indebtedness existed as evidenced by them. The case was tried before the court without a jury. Findings of fact and conclusions of law thereon were made and filed by the court. Defendants proposed various findings of fact, and conclusions of law, which were in the main denied, though some portions were granted and incorporated in the court's findings.

The Moline Milling Company was a corporation which plaintiffs had organized, owned, and managed up to the time the transactions involved here took place. They purchased the mill property and business in the spring of 1915 from a man named Gray, for $15,000. They ran the business for some time as a partnership and then incorporated, issuing $15,000 of stock to themselves, $5,000 to Buys and $10,000 to Vander Meer, who gave $100 par value of stock to his son to satisfy statutory requirements for incorporating. Of the transaction involved here the trial court found amongst other things as follows:

"5. Early in the spring of 1918 the defendants Weurdings and Luidens (practical millers and owners of a milling company at Holland, Michigan) began negotiations with plaintiffs for the purchase of the Moline Milling Company. The price asked by the plaintiffs for the real estate, machinery and fixtures was $15,000. They had actually invested more than $15,000 in the plant (*i. e.*, the real estate and machinery), at that time. But when the deal was finally closed, the middle of April, 1918, they cut this price to $13,000, and the sale of the mill, real estate and machinery was covered by a land contract running direct from Vander Meer and Buys (in whom the record title stood) to the Weurdings and Luidens. But the land contract did not cover or pretend to cover the merchandise, grain, coal, etc., in the mill and sheds adjacent. It was part of the bargain between plaintiffs and the Weurdings and Luidens that an inventory of this personal property should be taken; and this was done and the total amount thereof was fixed at $7,030.81. There was in addition at that time owing to the company upwards of $2,000 worth of bills and accounts receivable. Accordingly the bills and accounts were lumped at the sum of $2,068, which, added to the $7,030.81, made a total of $9,098.81, the face of the two notes Exhibits A and B—thus covering the entire sale price of the milling company. It was feared, however, that a portion of these bills and accounts receivable might not be collectible, and so it

227—Mich.—4.

was agreed that whatever balance of these accounts the Weurdings and Luidens were not able, within a reasonable time, to collect should be indorsed on these notes by the plaintiffs. And subsequently nearly $1,000 of these uncollectible accounts were indorsed thereon. Other payments were made on the notes, reducing them to the amount claimed as due on April 16, 1920, namely $5,931.81.

"6. The amount covered by these notes was largely represented by advancements made to the Moline Milling Company by the plaintiffs during the three years of their ownership. They actually put in $5,000 of money during that time, out of their own pockets, besides their labor and services in managing and operating the company. They never drew out anything for salaries, dividends, interest or by way of loans.

"7. Moreover it was part of the bargain at the time of the sale to the Weurdings and Luidens that Vander Meer and Buys personally should pay off all of the debts and liabilities of the milling company owing at the date of the sale—April 16, 1918. And I find as a matter of fact that Vander Meer and Buys did this, paying out between $8,000 and $9,000 for that purpose. All the debts and obligations which subsequently (March, 1920) brought the Moline Milling Company into bankruptcy originated after April 16, 1918, and as a result of the Weurding management. It appears and I find that Vander Meer and Buys pledged these two notes to the Grand Rapids Savings Bank as collateral to their note for $5,000, and this $5,000 was used by plaintiffs in paying off the debts of the Moline Milling Company which they had obligated themselves to pay."

It appears that the real estate of right belonging to this corporation, and so recognized by all parties in interest, was not legally conveyed to it by plaintiffs when they incorporated or when they later sold out to the Weurdings and Luidens, who they understood expected to reorganize the corporation, and so they gave them a land contract for the same instead of conveying it to the corporation. When the corporation was forced into bankruptcy in 1920 this condition of the title gave rise to litigation between the trustee

in bankruptcy and plaintiffs who had paid the creditors of the corporation in full for all its indebtedness incurred up to the time they made the sale in 1918. That matter was disposed of in this court (*Brooks* v. *Buys,* 217 Mich. 263) by a divided opinion and is cited by defendants' counsel as of significance here. Amongst other things it was there held in the majority opinion that the defendants (plaintiffs here) should be credited with $4,200, which it is now urged should in any event reduce the liability of defendants De Pree and Schuiling who were but gratuitous guarantors in the transaction.

We are unable under the facts shown and found in this case to find any distinction in legal liability between those two guarantors and the others for the indebtedness involved here. They all guaranteed payment of any indebtedness, direct or contingent, present or future, owing plaintiffs by the milling company up to $10,000. The court found that the $4,200 referred to "did not begin to repay them (plaintiffs) the total sum which they had paid out in liquidation of the debts of the corporation (upwards of $8,000) and did not at all cover the $5,000 it was owing them as individuals at the time of the sale to the Weurdings and Luidens."

Plaintiff Buys testified on cross-examination that plaintiffs filed a claim based on these notes against the milling company in the bankruptcy proceedings which was disallowed by the referee in bankruptcy and an appeal was taken to the United States district court where the claim was allowed to be withdrawn. An order of Judge Sessions of the United States district court was introduced in evidence granting plaintiffs leave to institute an action in relation to this claim against these defendants in a State court, which "as to said bankrupt shall go no further than judgment," and create no lien upon any property of the bankrupt in the custody or control of the bankruptcy court.

The claim in the bankruptcy court was not against any of the signers of the written guaranty sued on here. No record of the decision of the referee in bankruptcy was introduced in evidence nor his reasons for rejecting it disclosed. His decision being appealed from was not final and the claim was withdrawn by permission of the court to which it was appealed for the purpose of bringing an action in a State court. The trial court rightly disposed of that question of law and fact in part as follows:

"While there is evidence that plaintiffs presented a claim against the bankrupt estate, covering their land contract claim as well as their claim under these notes, it appears that the claim on the notes was withdrawn. Moreover, the bankruptcy court by an order specifically authorized the bringing of this suit against these defendants, with the understanding that nothing but a formal judgment should be entered against the bankrupt company. * * * I find, as a matter of law, there is nothing in this record showing that any claimed disallowance of said notes is *res adjudicata,* It appears that the claim was allowed to be withdrawn by the Federal court, so that it could be prosecuted in this court. And the parties are different."

Defendants also interposed the special defenses of *ultra vires* and want of consideration, urging that the president and secretary had not been given power to execute commercial paper of the corporation, which is therefore not bound by the notes; that the corporation, as such, was a stranger to the transaction which did not change its identity or increase its assets, but simply changed its control through the old stockholders selling all their stock to the new; that the indebtedness, if any, was that of the Weurdings and Luidens, while the guaranty related only to indebtedness of the Moline Milling Company.

After recapitulating the evidence the trial court found "that there was a good and sufficient consideration as between all the parties to this suit," both for

the two notes and guaranty. It is conclusively shown that at the beginning of this transaction the milling company was indebted to plaintiffs $5,000 for money advanced to it, and they assumed its then existing indebtedness of over $8,000 which they afterwards paid in full. None of those debts was ever listed in the bankruptcy proceedings begun in March, 1920. They also transferred to the purchasers of all the stock in the corporation, who became its owners in full control, its real estate, machinery and fixtures, valued at $15,000, with grain, coal, merchandise and other personal property, valued at over $7,000 and, in addition, guaranteed over $2,000 of bills receivable of the corporation, afterwards giving credit on these notes for about half of them, which proved uncollectible. There was ample proof to support the court's finding of consideration as to all parties.

The doctrine of *ultra vires* is urged as a defense to these notes on the ground that there is no proof of authority on the part of the president of the corporation to execute and deliver them. There is evidence that the milling company was in debt, and needed financial assistance to carry on its business which the new purchasers were not then able to fully furnish. To care for existing indebtedness and obtain extension of credit, giving notes therefor, was within the scope of its corporate powers, under prescribed methods, formalities and conditions. No question of public policy is involved here.

"Except in cases where the rights of the public are involved the plea of *ultra vires*, whether interposed for or against a corporation, will not be allowed to prevail when it will not advance justice, but will accomplish a legal wrong. * * * And it is a general principle of law that no party will be permitted to set up this defense while retaining the fruits or benefits of the contract." 10 Cyc. p. 1156; citing many sustaining decisions including several from this jurisdiction.

The financial support furnished by plaintiffs to which the notes related inured to the benefit of the corporation and its stockholders, who all knew of and authorized the transaction. The entire body of stockholders constitute in tangible form and substance the corporation. Where all the stockholders of a corporation unite in doing what amounts in substance and effect to a corporate action, within its general powers and for its benefit, they and it are thereafter estopped from denying the authority of the corporation in that respect.

The contract to which the notes related was fully performed on the part of plaintiffs and defendants received the benefit of what was done. The four Weurdings and Luidens owned all the stock of the corporation. George Weurding testified, "nobody else ever had any stock in it than the five of us," and Frances said that nobody but those five, naming them, "acquired any interest whatever in that mill property as a result of this transaction." Each and all of the stockholders in and owners of the corporation signed the guaranty which recognized and ratified those notes. It not only requests plaintiffs to give and continue from time to time credit to the corporation as they may desire but guarantees payment of *any* indebtedness, *direct or contingent*, then or thereafter owing to them by it, and to indemnify them against *any* loss therein.

As applied to this case the conclusion of the whole matter is well summed up in 14A C. J. p. 312, with citation of supporting authority, as follows:

"Where the corporation has power to enter into the transaction, neither party to it, who has had the benefit of it, can set up as a defense that the legal formalities were not complied with or that the power was improperly exercised. And the corporation will be estopped to deny that it did contract in the manner provided by statute as against other persons who have

acted upon the assumption that the corporation has done what the law said it should do. Anyone representing a party to the corporate transaction which is estopped to set up the irregularity of its execution, is also estopped. Unanimous consent and acquiescence of the stockholders, acted on by the parties concerned to such extent as to materially change their position, preclude the assenting stockholders as individuals, and the corporation as such, from afterward setting up legal informalities in regard to the execution of the transaction that affect only the interests of the stockholders, to the overthrow of rights that have been acquired on the faith of the consent and acquiescence."

The judgment will stand affirmed.

CLARK, C. J., and McDONALD, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.