ALLIED SUPERMARKETS, INC v GROCER'S DAIRY COMPANY

1. EQUITY—CLEAN HANDS—REBATE PLAN—CORPORATIONS.

Plaintiff's participation in a rebate plan of a corporation in the first instance is not asserted to be illegal or improper and its claim that the subsequent change from a cooperative to a profit corporation makes the plan illegal should not be held to bar it as with "unclean hands" in its action seeking the dissolution and liquidation of the corporation.

2. CORPORATIONS—PROFIT CORPORATION—REFUNDS—PATRONAGE REFUNDS—STOCKHOLDERS.

Defendant was a profit corporation where it originated as a cooperative corporation, later the articles of incorporation were amended to change the corporation to a regular profit corporation, the bylaws remain essentially unchanged limiting each shareholder to a single vote and providing for patronage refunds to shareholders and, the amount of the "refund" on the original price charged to its customers on its products depends on the profits defendant corporation anticipates or has realized and are prorated between the various customer-stockholders on the basis of the amount of business each stockholder has done with defendant corporation.

3. CORPORATIONS—DIVIDENDS.

A corporation need not pay out its dividends only on a prorata basis if another basis has been adopted by unanimous consent of the stockholders.

4. CORPORATIONS—REFUND ARRANGEMENT—STOCKHOLDERS—DISCRIMINATION.

Stockholder that knew how a corporation operated and assented to such operation when it bought its stock will not be heard to object even if the refund arrangement to its stockholders by the corporation is discriminatory.

REFERENCES FOR POINTS IN HEADNOTES
[1] 18 Am Jur 2d, Corporations §§ 153, 431.
[2] 18 Am Jur 2d, Corporations §§ 10, 11.
[3–7] 19 Am Jur 2d, Corporations §§ 890–896.

5. Corporations—Stocks—Issuance and Sale of Stock.

> Stockholder cannot be heard to complain about the issuance and sale of stock to others where the stock offering is an integral part of the plan of operating the business.

6. Corporations—Equity—Fraud—Stockholders.

> The conscience of equity is not moved to interfere with the operation of a corporation where there was no fraud alleged or proved in the inducement of plaintiff to invest in this business, the plan of operation in all of its ramifications was known and accepted by plaintiff, there was no overreaching or scheme to freeze out minority stockholders, plaintiff knew what it was buying at the time of its investment and it received what it bargained for.

7. Equity—Corporations—Stocks—Redemption of Stock—Contracts.

> A court of equity may not be used either as a lever to raise a better offer of redemption of stock of a corporation or as the means of avoiding the consequences of a legal contract now regarded as a bad bargain.

Appeal from Court of Appeals, Division 3, Danhof, P. J., and R. B. Burns and J. H. Gillis, JJ., affirming Kent, John T. Letts, J. Submitted January 10, 1974. (No. 14 January Term 1974, Docket No. 54,753.) Decided June 25, 1974.

45 Mich App 310 affirmed.

Complaint by Allied Supermarkets, Inc, against Grocer's Dairy Company and others for an injunction restraining the operation of defendant company, an accounting for the profits derived from its operation, and a dissolution and liquidation of the business. Judgment for defendants. Plaintiff appealed to the Court of Appeals. Affirmed. Plaintiff appeals. Affirmed.

*Honigman, Miller, Schwartz & Cohn* (by *Stanley Siegel* and *Robert A. Fineman),* for plaintiff.

*Warner, Norcross & Judd* (by *J. M. Neath, Jr., John D. Tully* and *Thomas D. Shelburne),* for defendants.

T. G. KAVANAGH, J. This suit involves a battle of labels. It is an equity action seeking an injunction restraining the operation of a successful business on account of asserted illegalities, an accounting for the profits derived from its operation, and a dissolution and liquidation of the business.

The trial court denied the relief prayed for, and the Court of Appeals affirmed its decision.[1] We granted leave not on account of any disagreement with the result, but because we were not satisfied that either the trial court or the Court of Appeals had accurately stated a legitimate reason for reaching it.

The history of the controversy may be summarized as follows:

Defendant originated in 1946 as Grocer's Cooperative Dairy Company a cooperative corporation.[2] In July 1954 the articles of incorporation were amended to change the corporation to a regular profit corporation, with the name amended to the present "Grocer's Dairy Company". Although the articles of incorporation were appropriately amended, the bylaws remained essentially unchanged limiting each shareholder to a single vote[3] and providing for patronage refunds to shareholders.

Plaintiff became a shareholder in the company in 1963 by virtue of its purchase of Plumb's Supermarkets, whereby plaintiff acquired 2 shares of Class A (voting stock) and 454 shares of Class B

---

[1] *Allied Supermarkets, Inc v Grocer's Dairy Co,* 45 Mich App 310; 206 NW2d 490 (1973).

[2] MCLA 450.98–450.109; MSA 21.99–21.110.

[3] This particular bylaw was later amended.

(common stock) of a par value of $45,600. In the beginning, plaintiff purchased substantial quantities of dairy products and received substantial rebates from defendant. Its business with defendant declined and eventually efforts were made by plaintiff to redeem its entire holdings with defendant company but these negotiations never reached fruition. Finally in 1970, plaintiff filed this action praying for dissolution of the defendant and distribution of its assets, claiming that defendant, a regular profit corporation, may not distribute patronage refunds, but rather must distribute dividends equally to all shareholders.

The record shows that defendant corporation has devised a method by which it can successfully compete with national dairy concerns. In essence, defendant corporation which distributes dairy products, charges its customers, who are retail outlets, a fixed price and then at the end of a period of time, refunds or rebates to its customers, who by the articles of incorporation and bylaws, are also stockholders. These rebates or refunds of a portion of the original price charged enable the retail outlet to meet, and in most cases, better the price competition of larger national concerns. The amount of the "refund" on the original price charged depends on the profits defendant corporation anticipates or has realized and are prorated between the various customer-stockholders on the basis of the amount of business each stockholder has done with defendant corporation. Article VIII of the bylaws provide:

"In the event any holder of Class A Common Stock shall operate more than one retail outlet, such holder shall be required to purchase one unit of Class A Stock for each retail outlet operated by such holder. No

shareholder shall be permitted to own more units of Class A Stock than such shareholder has retail outlets."

Although plaintiff had several retail outlets and thus, several voting units of Class A stock, its rebates or refunds were proportioned to it on the basis of the amount of business each retail outlet did with defendant corporation.

Plaintiff owned many more shares of Class B common stock, and when its business with defendant declined to the point where its refunds or rebates were negligible, it then objected that the refunds were really dividends and demanded that they be distributed on a prorata basis to the stockholders of Class A and Class B stock. Defendant refused since this would upset the scheme or plan of operation of the corporation and this lawsuit resulted.

The trial court held that since plaintiff bought into defendant corporation with full knowledge of the bylaws providing for the distribution of rebates or overcharges,[4] that it was estopped to object to the scheme at this late date.

---

[4] Article 6 * * * provides:

"*Section 2.* The corporation shall sell merchandise to its patrons at lowest possible prices, and overcharges shall be returned to patrons from time to time as hereinafter provided.

"*Section 3.* All of the overcharges not in the opinion of the Board of Directors required in the conduct and/or expansion of the business of the corporation shall be distributed to the patrons of the corporation in proportion to the patronage furnished by them respectively in the commodity or commodities from which the *overcharge* so distributed shall have been derived. The distribution to patrons shall be made promptly in each fiscal year after determination thereof. In computing the overcharge to be returned to patrons, only those purchases which have been paid for on time as provided in these By-Laws shall be considered."

Article 9 of the By-Laws defines the 'patrons' of the corporation entitled to such treatment:

"*Section 1.* The corporation, under the direction and approval of the Board of Directors, shall sell to its shareholders goods and merchandise which it may carry in stock, at the lowest possible prices. Such goods and merchandise shall be sold, as above provided, only to such persons as at the time of purchase shall own stock in conformity with

The Court of Appeals did not comment on that theory of the trial court but held that in reality defendant was not a profit corporation but rather a cooperative corporation and that its scheme was permissible pursuant to MCLA 450.98; MSA 21.99.

We think the plaintiff is correct when it argues on appeal that the doctrine of clean hands has no application here. The plaintiff's participation in the rebate plan in the first instance is not asserted to be illegal or improper and its claim that the subsequent change from a cooperative to a profit corporation makes the plan illegal should not be held to bar it as with "unclean hands".

Likewise we think it does violence to the language and the law to hold that defendant is not a profit corporation. The parties agree and the trial judge found that defendant is a profit corporation. We concur.

What we perceive to be the core issue is plaintiff's assertion in essence that it is illegal for a profit corporation to contract with its stockholders for rebates on its sales to them, because it is claimed that such a rebate is really a distribution of dividends on a preferential basis.

Plaintiff maintains that the reasoning of the Court of Appeals that the refunds to the customer-shareholders are in effect reductions in the purchase price and not dividends results from a linguistic and logical error.

Plaintiff insists that because these distributions are in part calculated and based upon "profits" they are "dividends" and as such must be distributed prorata among the stockholders.

the provisions of Section 1 of Article VIII hereof; provided, however, that the Board, in its discretion, may allow merchants other than shareholders to purchase goods and merchandise, for cash only, at a price to be determined by the General Manager."

This strikes us as the other side of the coin of error.

The label is of little importance. It is the nature of the transaction that determines its legality.

These distributions were contemplated and agreed to by all of the parties to the contract. A contract for such distribution is consonant with articles II, VI and IX of the articles and bylaws of defendant corporation.[5] We are cited to no law or

---

[5]                             *"Article II.*

"The purpose or purposes of this corporation are as follows:

"To promote the efficient and economical distribution, production, assembling, crating, handling, shipping, marketing, advertising buying, selling and offering for sale of all commodities distributed through food and grocery stores, including, but not by way of limitation, the buying, warehousing distributing, selling, handling, producing, shipping, marketing, and advertising of commodities, especially milk and cream, the derivations thereof, and other dairy products usually distributed through food and grocery stores * * * "

*"Article* VI.
*"Fiscal Year and Prices*

*"Section* 1. The fiscal year of the corporation shall commence on the first day in December of each year and end on the following thirtieth day of November in each year.

*"Section* 2. The corporation shall sell merchandise to its patrons lowest possible prices, and overcharges shall be returned to patrons from time to time as hereinafter provided.

*"Section* 3. All of the overcharges not in the opinion of the Board of Directors required in the conduct and/or expansion of the business of the corporation, shall be distributed to the patrons of the corporation in proportion to the patronage furnished by them respectively in the commodity or commodities from which the overcharge so distributed shall have been derived. The distribution to patrons shall be made promptly in each fiscal year after determination thereof. In computing the overcharge to be returned to patrons, only those purchases which have been paid for on time as provided in these By-Laws shall be considered."

*"Article* IX.
*"Sales to Shareholders*

*"Section* 1. The corporation, under the direction and approval of the Board of Directors, shall sell to its shareholders goods and merchandise which it may carry in stock, at the lowest possible prices. Such goods and merchandise shall be sold, as above provided, only to such persons as at the time of purchase shall own stock in conformity with the provisions of Section 1 of Article VIII hereof; provided, however, that the Board, in its discretion, may allow merchants other than shareholders to purchase goods and merchandise, for cash only, at a price to be determined by the General Manager.

public policy, nor do we know of any, which makes this contract illegal or void.

In any event even if such refunds be considered "dividends" a corporation need not pay out its dividends on only a prorata basis if another basis has been adopted by unanimous consent of the stockholders. 11 Fletcher, *Corporations,* § 5352. And, further, because Allied knew how Grocer's operated and assented to such operation when it bought its stock it will not now be heard to object even if the refund arrangement is discriminatory. *Cf. Vander Meer v Weurding,* 227 Mich 46; 198 NW 828 (1924).

Plaintiff also complains that the issuance and sale of stock to others reduces its equity position in the corporation and because of the sale of the stock at its par value of $100 where its book value is considerably in excess of that amount it amounts to an illegal preference of the other stockholders.

Under other circumstances the plaintiff's complaint might be justified, but here where the stock offering is an integral part of the plan of operating the business, the plaintiff can not be heard to complain.

The plan contemplates that all customer-stockholders are to be treated alike and they are. Plaintiff's position which differs from the other stockholders in that it is no longer a customer is of its own choosing.

There was no fraud alleged or proved in the inducement of plaintiff to invest in this business. The plan of operation in all of its ramifications was known and accepted by plaintiff. There is no

---

"*Section 2.* The corporation will, at such times as it seems advantageous, manufacture or process such items as may be in demand and on such items prices will be fixed with a view of making greater savings for the common shareholders."

overreaching or scheme to freeze out minority stockholders established in this record.

Accordingly the conscience of equity is not moved to interfere. Plaintiff knew what it was buying at the time of its investment. It received what it bargained for. A court of equity may not be used either as a lever to raise a better offer of redemption or as the means of avoiding the consequences of a legal contract now regarded as a bad bargain.

Affirmed with costs to defendants.

T. M. KAVANAGH, C. J., and SWAINSON, WILLIAMS, LEVIN, M. S. COLEMAN, and J. W. FITZGERALD, JJ., concurred with T. G. KAVANAGH, J.