CHRISTNER v ANDERSON, NIETZKE & COMPANY, PC

Docket No. 86187. Submitted May 15, 1986, at Lansing. Decided November 18, 1986. Leave to appeal applied for.

Plaintiff, Gary L. Christner, a certified public accountant and former shareholder-director of Anderson, Nietzke & Company, P.C., brought an action in the Tuscola Circuit Court seeking damages from defendant Anderson, Nietzke & Company, P.C., for breach of a deferred compensation contract, and from nine of the company's shareholder-directors, for breach of their implied covenant of good faith for causing the corporation to disavow its obligation under the deferred compensation agreement. Plaintiff thereafter amended his complaint to add as defendants the four companies formed upon dissolution of Anderson, Nietzke and each of their individual shareholders who had not been a shareholder in Anderson, Nietzke. Plaintiff alleged against these defendants and the nine former shareholder-directors of Anderson, Nietzke that they tortiously interfered with plaintiff's deferred compensation contract. Plaintiff also alleged that the nine former shareholder-directors interfered with plaintiff's expectancy of earning substantial sums under the deferred compensation agreement, conspired to wrongfully transfer and appropriate to themselves all assets of Anderson, Nietzke, and violated their fiduciary duty to plaintiff as a creditor and minority shareholder. Plaintiff subsequently amended his complaint a second time to allege tortious interference with plaintiff's contract rights, conspiracy, and breach of fiduciary duty in regard to a buy-sell agreement between Anderson, Nietzke and its ten shareholder-directors, including plaintiff. An arbitrator assigned to hear separate proceedings instituted by the plaintiff to enforce the buy-sell agreement had previously entered an award in favor of the plaintiff for

REFERENCES

Am Jur 2d, Corporations §§ 1758, 1842 et seq., 2243 et seq., 2714.
Am Jur 2d, Equity §§ 142, 143.
Am Jur 2d, Interference §§ 1 et seq.
Liability of third party for interference with prospective contractual relationship between two other parties. 6 ALR4th 195.
See also the annotations in the Index to Annotations under Corporate Officers, Directors, and Agents; Equity.

$366,002.91. However, Anderson, Nietzke had already been dissolved and its tangible assets had been sold to pay off a secured creditor. The trial court, M. Richard Knoblock, J., issued an opinion providing in essence that Anderson, Nietzke was liable to plaintiff for breach of the deferred compensation agreement, that the firm's shareholder-directors were not personally liable for such breach nor for the breach of the buy-sell agreement for which liability and damages had already been adjudged, and that the four defendant firms formed after the dissolution were not successors of Anderson, Nietzke and were therefore not liable for the debts of the former corporation. Plaintiff appeals.

The Court of Appeals *held:*

1. Plaintiff's allegations sufficiently stated a cause of action against the other shareholder-directors of Anderson, Nietzke for breach of fiduciary duties.

2. Plaintiff failed to rebut the other shareholder-directors' prima facie showing of fairness and reasonableness in regard to the sale of Anderson, Nietzke's tangible assets.

3. MCL 600.3625; MSA 27A.3625 does not serve as a basis to render the individual defendants liable for any part of the judgment entered against Anderson, Nietzke. The statute does not prohibit the setoff of the notes receivable of seven of the former Anderson, Nietzke shareholder-directors pursuant to the buy-sell agreement.

4. The defendant shareholder-directors either appropriated Anderson, Nietzke's goodwill to themselves without payment of consideration or dissipated a corporate asset by voting to cancel the noncompetition clauses. The trial court erred in concluding that the shareholder-directors were not liable to plaintiff as a creditor because he was not a judgment creditor at the time the corporation liquidated its assets. The trial court also erred in ruling that plaintiff could not assert these claims in an individual action. Plaintiff's injuries were distinct and an individual action was appropriate.

5. The defendant shareholder-directors are liable in their personal capacities on the two judgments secured against Anderson, Nietzke; however, plaintiff's recovery should be limited, on equitable grounds, to his proportional ownership interest (approximately 13.6 percent) in the remaining assets of the corporation after the claims of the other creditors are satisfied.

6. Since plaintiff is entitled to damages for the improper misappropriation of the goodwill of Anderson, Nietzke, an allowance of liquidated damages for breach of the noncompetition clause would twice value the same asset and would award

plaintiff a windfall. Thus, plaintiff is not entitled to damages for both wrongdoings.

7. One who alleges tortious interference with a contractual relationship must prove the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights of another. The trial court did not err in finding that the defendant shareholder-directors' legitimate motivations shielded them from liability against this cause of action.

Affirmed in part, reversed in part and remanded.

1. CORPORATIONS — DISSOLUTION — DIRECTORS — STANDARD OF CONDUCT.

The directors of a corporation are held to the standard of conduct of good faith and ordinary diligence in regard to the valuation and sale of the corporation's tangible assets during the dissolution process.

2. CORPORATIONS — DIRECTORS — DEALINGS WITH CORPORATION — BURDEN OF PROOF.

It is the burden of a corporation's directors to prove that a transaction was fair and reasonable where the directors themselves engage in direct dealings with the corporation (MCL 450.1545, 450.1546[1]; MSA 21.200[545], 21.200[546][1]).

3. CORPORATIONS — DIRECTORS — DISTRIBUTION OF ASSETS.

Joint and several liability is imposed on directors who vote in favor of or concur in a corporate decision to distribute assets to a shareholder without paying or adequately providing for all known debts and liabilities of the corporation, whether liquidated or unliquidated, mature or unmatured, direct or indirect, absolute or contingent, or secured or unsecured (MCL 450.1551, 450.1855; MSA 21.200[551], 21.200[855]).

4. CORPORATION — ACTIONS — STOCKHOLDERS.

A stockholder may individually sue corporate directors, officers, or other persons when he has sustained a loss separate and distinct from that of the other stockholders generally as a result of a wrongful transfer of assets.

5. EQUITY — LITIGANT'S ACTS.

The general rule is that a litigant should not be the beneficiary of his own questionable acts.

6. TORTS — INTERFERENCE WITH CONTRACTUAL RELATIONSHIP.

A party who alleges tortious interference with a contractual relationship must prove the intentional doing of a per se

wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights of another.

*Joseph, Wolf & Endean, P.C.* (by *Jeffrey J. Endean*), for plaintiff.

*Forrest Walpole,* for defendants.

Before: D. F. WALSH, P.J., and SULLIVAN and N. A. BAGULEY,* JJ.

SULLIVAN, J. Plaintiff, Gary L. Christner, a certified public accountant and former shareholder-director of defendant Anderson, Nietzke & Company, P.C., a dissolved professional service corporation, brings this appeal as of right from an order of judgment entered by the Tuscola Circuit Court after a three-day bench trial.

To ensure a full understanding of the issues raised by the parties, recital of the complete, albeit lengthy, factual background of this case is necessary.

Prior to January 1, 1976, plaintiff was a fifty percent shareholder in the firm of Moore & Christner, P.C. The value of this firm was predominantly "goodwill," an intangible asset attributed to the firm's client base. On January 1, 1976, the predecessor firm of Anderson, Nietzke bought Moore & Christner, P.C. Pursuant to this merger, plaintiff became a director of the new firm and received 1,500 shares of stock, which at that time represented 11.11 percent ownership of the firm. In return, plaintiff sold to the firm his interest in the assets of Moore & Christner, P.C., which included $106,200 in goodwill. (The lower court record does not indicate the value of the tangible assets owned by plaintiff.)

---

* Circuit judge, sitting on the Court of Appeals by assignment.

By 1981, the firm had ten partners and was operating offices in the thumb area communities of Pigeon, Bad Axe, Caro, Sandusky and Lapeer. In November of 1981, when individual defendants Nolin, Oesch, Walsh and Bernhardt became shareholder-directors of the firm, the ten shareholder-directors each executed a master employment contract, a buy-sell agreement, and a deferred compensation agreement with the firm. These documents superseded the employment contract plaintiff had signed on January 1, 1976, when he joined the firm.

Both the master employment contract and the buy-sell agreement contained covenants not to compete in the event an employee left the firm. The buy-sell agreement also required the corporation to repurchase a shareholder's stock if the shareholder's employment was terminated for any reason.

The deferred compensation agreement provided that, upon termination, an employee would receive a monthly income equal to thirty percent of his average monthly salary based upon the employee's highest three years of earnings. A terminated employee was entitled to receive payments ninety days after giving notice requesting such benefits and payments were to continue for fifteen years. Although an employee's right to receive full benefits did not vest until he had been with the firm for thirteen years, anyone with the firm for at least three years was entitled to receive a pro-rata percentage of the benefits. The plan further provided that it was subject to amendment at any time "by a written instrument executed by a duly authorized officer of the company provided such amendment is communicated to those employees participating in this plan."

In May of 1982, the shareholder-directors voted

on a motion to terminate plaintiff as an employee. The motion gained only two votes and failed to pass.

On November 11, 1982, a memo was distributed to the shareholder-directors, requesting that consideration be given at the next executive committee meeting to amending the firm's buy-sell agreement. The memo reflected the concern of a number of the partners relating to the ability of the firm to meet the obligations under both the agreement and the deferred compensation plan. The memo was discussed at the next meeting and a motion was made to further discuss the buy-sell agreement at the December 22, 1982, directors' meeting. However, before that meeting took place, a special directors' meeting was held on December 3, 1982, during which a motion to terminate the deferred compensation plan passed by a vote of eight to zero, with two abstentions, including one by plaintiff.

On December 22, 1982, at the regularly scheduled directors' meeting conducted without the presence of plaintiff, a motion was made to terminate plaintiff's employment. The vote was unanimous in favor of termination. Thereafter, plaintiff requested the firm to honor its obligation under the buy-sell agreement to repurchase his stock. However, the corporation refused. At that point, plaintiff instituted arbitration proceedings to enforce the buy-sell agreement. At the time of his termination, plaintiff owned a 13.6 percent interest in Anderson, Nietzke.

On August 24, 1983, plaintiff filed the instant complaint, seeking damages from the corporation for breach of the deferred compensation contract, and damages from the other nine shareholder-directors for breach of their implied covenant of good faith for causing the corporation to disavow

its obligation under the deferred compensation agreement.

Two days later, on August 26, 1983, the nine remaining shareholder-directors signed documents to dissolve Anderson, Nietzke. However, prior to dissolution, the shareholder-directors cancelled the noncompetition covenants and the clause in the buy-sell agreement which required the corporation to repurchase the employee's stock upon termination. At that point, all the partners and the professional staff of Anderson, Nietzke resigned. Testimony at trial indicated that the dissolution was caused in great part by personal animosity and disagreements over business decisions between the shareholders.

Four new CPA firms were formed simultaneous with the dissolution. The four new firms opened branches in Caro, Pigeon, Lapeer, and Bad Axe, in the same offices that had been occupied by the branch offices of Anderson, Nietzke, and maintained the same phone numbers. The split was announced to Anderson, Nietzke's clients by a letter dated August 26, 1983, which informed the clients that there would be no interruption in the service they had been receiving.

With the exception of individual defendant John Walsh, who did not join any of the new firms, all of Anderson, Nietzke's employees continued employment in the same physical locations in which they had previously worked. The client files remained in each office and continued to be serviced by the same personnel.

Upon learning that Anderson, Nietzke planned to dissolve, a creditor bank called in a loan on which approximately $175,000 was owing and attached its security: Anderson, Nietzke's accounts receivables and tangible assets. All of the shareholders, including plaintiff, were personal guaran-

tors of the loan. To help pay the obligation, each new firm paid Anderson, Nietzke the appraised value of the tangible assets located in the offices which each occupied. Anderson, Nietzke used these amounts as well as amounts collected on their accounts receivables to pay the bank obligation, apparently leaving it without any remaining tangible assets.

On November 9, 1983, plaintiff amended his complaint and added as defendants the four new corporations and each of their individual shareholders who had not been a shareholder in Anderson, Nietzke. Plaintiff also added additional counts which alleged, in essence, that the former shareholder-directors of Anderson, Nietzke, the new firms and the shareholders of the new firms tortiously interfered with plaintiff's deferred compensation contract, that the former shareholder-directors of Anderson, Nietzke had interfered with plaintiff's expectancy of earning substantial sums under the deferred compensation agreement by voting to cancel the agreement, that the former shareholder-directors of Anderson, Nietzke had conspired to wrongfully transfer and appropriate to themselves all assets of Anderson, Nietzke, and that the former shareholder-directors of Anderson, Nietzke had violated their fiduciary duty to plaintiff as a creditor and a minority shareholder.

On November 17, 1983, plaintiff moved for a preliminary injunction to enjoin defendants from further dissipating the assets of Anderson, Nietzke and for the appointment of a receiver. These motions were denied.

Meanwhile, the arbitrator assigned to the buy-sell agreement dispute between plaintiff and Anderson, Nietzke entered an award in favor of plaintiff in the amount of $366,002.91 plus ten percent annual interest from February 13, 1984.

Anderson, Nietzke's attorney stipulated to confirmation of the award on April 26, 1984. In reliance upon the stipulation, the trial judge entered a judgment affirming the award. However, as stated previously, Anderson, Nietzke had already been dissolved and its tangible assets had been sold to pay off the secured creditor.

On June 19, 1984, plaintiff filed a second amended complaint, adding seven new counts. Five of these counts were similar to the five counts in the first amended complaint which alleged tortious interference with plaintiff's contract rights, conspiracy, and breach of fiduciary duty, but were related to the buy-sell agreement, rather than to the deferred compensation plan.

A three-day bench trial was conducted from October 30 to November 1, 1984. On February 19, 1985, the trial judge issued his opinion. As pertaining to the issues on appeal, the opinion provided in essence that Anderson, Nietzke was liable to plaintiff for breach of the deferred compensation agreement, that the firm's shareholder-directors were not personally liable for such breach, nor for the breach of the buy-sell agreement for which liability and damages had already been adjudged, and that the four defendant firms formed after the dissolution were not "successors" of Anderson, Nietzke and were therefore not liable for the debts of the former corporation.

The parties do not contest the fact that plaintiff's firing activated the compensation clauses in the buy-sell agreement and the deferred compensation plan.

I

The first issue is plaintiff's claim that the other shareholder-directors of Anderson, Nietzke, each

named as individual defendants herein, are liable for the judgments entered against the corporate defendant, due to their breach of fiduciary duties and improper transfer of assets out of the corporation prior to the payment of plaintiff's claims.

Contrary to defendants' response, plaintiff sufficiently pled this claim. Count VIII of plaintiff's first amended complaint, which was incorporated by reference in the second amended complaint, reads in pertinent part:

> 48. Defendants Bendrey, Brining, Nietzke, Anderson, Tuckey, Bernhardt, Walsh, Oesch and Nolin as shareholders, officers and directors of Defendant Corporation have a fiduciary duty to Plaintiff as a minority shareholder and creditor of said Company to act responsibly and in accordance with the laws of the State of Michigan.
>
> 49. Defendants Bendrey, Brining, Nietzke, Anderson, Tuckey, Bernhardt, Walsh, Oesch and Nolin have violated their fiduciary duties to Plaintiff through the following:
>
> * * *
>
> (b) They failed to provide to Plaintiff proper notice pursuant to MSA 21.200 (753); MCLA 450.1753, of the attempted liquidation of the Corporation and/or transfer of substantially all of the assets of Defendant Anderson, Nietzke & Company, P.C.
>
> (c) Defendants have attempted to liquidate Defendant Anderson, Nietzke & Company, P.C. and to transfer assets out of said Corporation prior to the payment of claims by Plaintiff against the Corporation.
>
> (d) Defendants have proceeded with the above actions with knowledge of Plaintiff's claim against the Corporation under the Deferred Compensation Agreement.

Having found that plaintiff's allegations sufficiently stated a cause of action against the share-

holder-directors for breach of fiduciary duties, we next review the trial court's findings that such defendants were not liable for the corporation's debt to plaintiff. The trial judge concluded that the shareholder-directors were not liable to plaintiff as a creditor because he was not a judgment creditor at the time of the liquidation. This generalized statement of the law is erroneous. Whether or not plaintiff herein was a proper plaintiff to sue for breach of fiduciary duties must be analyzed pursuant to each category of assets which plaintiff contends were improperly distributed.

First, plaintiff complains that the tangible assets of the corporation were sold to the new firms in an unreasonable manner, without providing notice to him and without competitive bidding. The firm's tangible assets were appraised by an independent appraiser and sold at the appraised value. Defendants assert that this method was fair and reasonable. MCL 450.1541; MSA 21.200(541) holds a director to a standard of care of good faith and ordinary diligence. It also provides that "when acting in good faith," a director may rely "upon the report of an independent appraiser selected by reasonable care by the board." MCL 450.1541; MSA 21.200(541). The mere fact that the valuation and sale took place during the dissolution process does not mean that the directors are held to any greater standard of conduct. MCL 450.1834(a); MSA 21.200(834)(a). However, in situations where directors themselves engage in direct dealings with the corporation, it becomes their burden to prove that the transaction was fair and reasonable. MCL 450.1545; MSA 21.200(545), MCL 450.1546(1); MSA 21.200(546)(1); *Holden v Lashley-Cox Land Co,* 316 Mich 478, 483; 25 NW2d 590 (1947).

In the instant situation, the appraisal itself was excluded from evidence on the basis that it was

hearsay. However, the testimony admitted at trial established that the new firms purchased the tangible assets at the price indicated on the appraisal. There has been no claim that the appraiser was not independent or did not use reasonable care. Plaintiff merely claims that a competitive bidding procedure should have been employed. In our opinion, the shareholder-directors satisfied their burden of proof. The appraisal was subject to discovery and presumably plaintiff was well aware of its contents. If plaintiff believed the appraised value of the assets was too low, he could have introduced such evidence at trial. Plaintiff failed to rebut defendants' prima facie showing of fairness and reasonableness.

Second, Anderson, Nietzke's April 30, 1983, financial statement indicated as assets a $19,382.20 note receivable from Bendrey, a $19,382.20 note receivable from Brining, an $8,636.03 note receivable from Tuckey, a $30,846.78 note receivable from Bernhardt, a $30,846.78 note receivable from Oesch, a $30,846.78 note receivable from Nolin, and a $30,846.78 note receivable from Walsh. Thus, at the time of dissolution, seven of the nine shareholder-directors were in debt to Anderson, Nietzke. None of these amounts had been paid by the date of trial. Nietzke, the firm's president, testified that the notes had been presented to the corporation in exchange for corporate stock when each individual became a shareholder. Nietzke also testified that upon dissolution the corporation forgave the balance due on these notes and reclaimed the stock pursuant to a clause in the buy-sell agreement which provided that the corporation's obligation to repurchase a shareholder's stock was to be offset by the amount due on the notes.

Citing MCL 600.3625; MSA 27A.3625, plaintiff

contends that forgiveness of these notes was improper. This statute specifically provides:

> (1) In all cases in which the directors or other officers of a corporation, or the stockholders thereof, are parties to the action in which judgment is rendered, if the property of such corporation *is insufficient to discharge its debts, the court shall* proceed to compel each stockholder to pay in the amount due and remaining unpaid on the shares of the stock held by him, or so much thereof as is necessary to satisfy the debts of the company.

We cannot find that this statutory provision prohibited the setoff executed pursuant to the buy-sell agreement. The action was taken by the corporation shortly after this suit was instituted, and a full year and a half before judgment was entered against it. It cannot be said that the shareholder-directors executed the transaction involving the setoff with the motive of defrauding plaintiff by eliminating their liability under this statute in the event that plaintiff might obtain a judgment against the corporation. Upon terminating their employment with the corporation, these individual defendants had a contractual right to have their stock redeemed by the corporation and, at the same time, the corporation had a contractual right to subtract the amounts still owed by each shareholder from the redemption price. Consequently, the setoff inured to the benefit of the corporation, as opposed to the individual shareholders. Under such circumstances, the quoted provision does not serve as a basis to render the individual defendants liable for any part of the judgment entered against the corporation.[1]

---

[1] In reviewing the testimony elicited at trial, it is apparent that the setoffs of the amounts due on the notes from the redemption price

The final category of assets which were allegedly misappropriated is the corporation's goodwill. In rejecting plaintiff's claim of misappropriation of this corporate asset, the trial judge concluded that "plaintiff failed to show that the firm [sic] client base or goodwill had any value once the former partners resigned from the firm." This conclusion was based on testimony by the expert witnesses of both parties that a third party would not be willing to buy the firm's client base knowing that all of the selling practitioners plan to continue practicing in the same locations. There was abundant evidence that the goodwill of such firms was transferred only in situations where the owners promised not to compete or join the firm of the purchaser.

Here, in valuing the corporation's goodwill, the consideration is not what a stranger to the corporation would have paid for it, but rather what value the goodwill had to the individual defendants who actually procured it. The day before the shareholder-directors resigned, Anderson, Nietzke had a substantial amount of goodwill. The next day, when said shareholder-directors commenced practice with the new firms, each had obtained the dissolved corporation's established clientele, which was of a significant intangible value. The shareholder-directors therefore appropriated the predominant value of Anderson, Nietzke and divided it among themselves to the exclusion of plaintiff.

Even under the trial court's analysis (that once the shareholder-directors resigned from the corporation, the corporation ceased to possess an intan-

were executed after the shareholder-directors cancelled the clause in the buy-sell agreement which required the repurchase of the stock by the corporation. Plaintiff, however, does not rely on such inconsistent actions as a basis for recovery against the individual defendants; therefore, we need not reach the issue of what effect such actions have on the resolution of this case.

gible value) the shareholder-directors are still liable for dissipating the asset. It is apparent that the noncompetition clauses were cancelled to enable the shareholder-directors to avoid liability to the corporation in damages when they assumed their own individual practices. This action had the effect of dissipating the goodwill of the corporation to the detriment of itself, its creditors, and its minority shareholders. Further, the defendants have again failed to articulate any business purpose to justify the cancellation. Thus, it is clear that the shareholder-directors either appropriated the corporation's goodwill to themselves without payment of consideration or dissipated a corporate asset by voting to cancel the noncompetition clauses.

These individual defendants are liable to plaintiff under §§ 855 and 551 of the Business Corporation Act, which, when read together, impose joint and several liability on directors who vote in favor of or concur in a corporate decision to distribute assets to a shareholder without paying or adequately providing for all known debts and liabilities of the corporation, whether liquidated or unliquidated, mature or unmatured, direct or indirect, absolute or contingent, secured or unsecured. MCL 450.1855; MSA 21.200(855), MCL 450.1551; MSA 21.200(551). Thus, the trial judge erred when he concluded that the shareholder-directors were not liable to plaintiff as a creditor because he was not a judgment creditor at the time the corporation liquidated its assets.

Further, we note here that the trial court erred in ruling that plaintiff could not assert these claims in an individual action. The court wrongfully reasoned that a cause of action for wrongful transfer of assets may only be maintained by the corporation. "A stockholder may individually sue corporate directors, officers, or other persons when

he has sustained a loss separate and distinct from that of other stockholders generally." 19 Am Jur 2d, Corporations, § 2245, p 147. In the instant case, all nine of the remaining shareholders either personally (forgiveness of indebtedness on promissory notes) or indirectly through their new firms (retention of Anderson, Nietzke's client base-goodwill) received a distribution of corporate assets upon liquidation. As plaintiff was the only shareholder excluded, his injuries were "distinct" and an individual action was appropriate. See also 19 Am Jur 2d, Corporations, §§ 2243-2246.

Although we conclude that the shareholder-directors are liable in their personal capacities on the two judgments secured against the corporation, plaintiff's recovery should be limited on equitable grounds in order to avoid a windfall.

Pursuant to the judgments, plaintiff is entitled to an award of $366,002.91 (excluding interest) under the buy-sell agreement and to payments of $991.16 per month for 180 months (for a total of $178,408.50) under the deferred compensation plan. However, plaintiff's expert witness valued the goodwill of Anderson, Nietzke at $739,504. (He opined that Anderson, Nietzke's goodwill should be valued at the lowest end of the range [from 150 percent to 50 percent] recommended by the American Institute of Certified Public Accountants, i.e., fifty percent of annual revenues.) Thus, although at the time of his firing plaintiff owned only a 13.6 percent interest in Anderson, Nietzke, full recovery herein would award plaintiff most of the firm's predominant value and remaining assets.

Plaintiff was fired because of alleged inferior job performance. By fortuity, agreements existed which provided for compensation upon termination for any reason. These agreements were unrealistic, created excessive corporate obligations,

and were unfunded. By luck, plaintiff happened to be the first participant of the plans to end his employment with the corporation and, thus, reap the benefits of such obligations. In accordance with the general rule that a litigant should not be the beneficiary of his own questionable acts, *Curylo v Curylo,* 104 Mich App 340, 346; 304 NW2d 575 (1981), we find it inequitable to reward plaintiff's claimed poor job performance with a windfall at the expense of his former coshareholders. We therefore limit plaintiff's recovery to his proportional ownership interest (approximately 13.6 percent) in the "remaining assets" of the corporation after the claims of the other creditors are satisfied. "Remaining assets" would include goodwill at the value determined by plaintiff's own expert and the amount due on the promissory notes forgiven by the corporation.[2]

II

We next address plaintiff's argument that he is entitled to enforce the corporation's right to collect liquidated damages under the buy-sell agreement executed by the corporation and each shareholder. Plaintiff avers that the individual defendants breached the noncompetition clause by continuing to serve Anderson, Nietzke's former clients in their capacity as shareholders of the successor firms. Under § 15(e) of the agreement, a shareholder who breached this clause would be liable to the firm in the amount of fifty percent of the previous year's fees earned from each client lured away.[3]

Defendants responded that the covenant not to

---

[2] We note that our conclusion limiting plaintiff's recovery on equitable grounds is based only on the particular facts of this case. The holding should not be broadly construed to apply beyond such a factual context.

[3] Defendants initially responded that plaintiff failed to sufficiently

compete and the accompanying liquidated damage provision were deleted by amendment. Yet, we note that the clear language of the agreement dictated that it could not be amended without the consent of all the shareholders, including plaintiff. Because plaintiff did not consent to the modification, it was without legal affect.

We nonetheless conclude that, notwithstanding whether the noncompetition clause was enforceable,[4] the accompanying liquidated damage provision represents the parties' stipulated value for goodwill.[5] Since we have already concluded that plaintiff is entitled to damages for the improper misappropriation of the corporation's goodwill, an allowance of liquidated damages for breach of the noncompetition clause would twice value the same asset and would award plaintiff a windfall. Thus, plaintiff is not entitled to damages for both wrongdoings.

### III

The final issue which we address is whether the trial court erroneously ruled that plaintiff did not adequately prove his allegations of tortious inter-

plead such a cause of action in his complaint and that the right asserted, if existing at all, belongs to the corporation. We have already concluded, however, that plaintiff had the right to bring an individual action on his behalf against the individual defendants for the improper distribution of corporate assets. Since the corporation's right to collect damages is an asset and plaintiff pled that the other shareholders attempted to dissipate the corporate assets without paying plaintiff's claims, the issue was sufficiently pled and plaintiff was entitled to raise it in this action.

[4] Defendants, citing MCL 445.761; MSA 28.61, repealed by 1984 PA 274, § 17, effective March 29, 1985, asserted the clause was an unenforceable agreement not to engage in a profession. However, the manner in which we choose to dispose of the issue renders it unnecessary to address the merits of this response.

[5] As stated, the clause awarded damages at fifty percent of the previous year's fees paid by each client lured away. This figure closely coincides with the testimony of plaintiff's expert's opinion which placed the value of the corporation's goodwill at fifty percent of its annual revenues.

ference with a contractual relationship.[6] The trial court held that the defendants did not act with the purpose of interfering with plaintiff's rights under the deferred compensation agreement and the buy-sell agreement, but, rather, were motivated by legitimate personal and business reasons. Plaintiff, relying on *Dassance v Nienhuis,* 57 Mich App 422; 225 NW2d 789 (1975), now argues on appeal that an improper motive is not an element of the tort. Plaintiff asserts that he merely needed to prove that defendants had knowledge of the contract and that their interference with it was unauthorized. We disagree.

*Dassance* relied principally upon *Meyering v Russell,* 53 Mich App 695; 220 NW2d 121 (1974). The *Meyering* opinion was summarily reversed by the Supreme Court, which adopted the dissent from this Court's opinion. 393 Mich 770; 224 NW2d 280 (1974). *Dassance* is no longer good law on the issue. See *Feldman v Green,* 138 Mich App 360, 371; 360 NW2d 881 (1984), lv den 422 Mich 961 (1985).

Under the current state of law, one who alleges tortious interference with a contractual relationship must prove the intentional doing of a per se wrongful act or the doing of a lawful act with

---

[6] We choose not to consider plaintiff's assertion that the new firms established after the liquidation were "successors" of Anderson, Nietzke, so as to render them liable for the corporation's debts. In our opinion, plaintiff did not sufficiently allege this claim in his pleadings. In Counts III and XI, plaintiff alleged that the new firms "tortiously interfered" with his rights under the buy-sell agreement and the deferred compensation plan. In Counts VI and XIII, plaintiff alleged that all the defendants engaged in a "conspiracy" to wrongfully interfere with such contract rights.

Further, in his trial brief, plaintiff argued that the new firms were liable because they had participated in a fraudulent conveyance. Plaintiff did not raise the theory of successor liability until his post-trial brief. Under these circumstances, the new firms were not given adequate notice so as to enable them to properly defend against this theory of liability. GCR 1963, 111.1(1), now MCR 2.111(B)(1).

malice and unjustified in law for the purpose of invading the contractual rights of another. *Id.,* at 378; *Trepel v Pontiac Osteopathic Hospital,* 135 Mich App 361, 376-377; 354 NW2d 341 (1984), lv den 422 Mich 853 (1985). The trial court did not err in finding that defendants' legitimate motivations shielded them from liability against this cause of action.

Affirmed in part, reversed in part and remanded for entry of judgment consistent with this opinion.