CHRISTNER v ANDERSON, NIETZKE & COMPANY, PC

Docket No. 80272. Argued December 7, 1988 (Calendar No. 1). Decided August 1, 1989.

Gary L. Christner, a shareholder, director, and employee of Anderson, Nietzke & Company, Inc., brought an action in the Tuscola Circuit Court against the company and the remaining shareholder-directors following termination of his employment, seeking to enforce agreements to repurchase his stock, damages resulting from the breach of a deferred compensation contract, and damages for breach of an implied covenant of good faith. Thereafter, the remaining shareholders dissolved the corporation and formed smaller firms which operated at the company's former locations and served many of its former clients. After its outstanding obligation to a creditor was paid, the company was left with no assets. The plaintiff amended his complaint, adding the new firms and their individual shareholders who had not been shareholders of Anderson, Nietzke. The court, M. Richard Knoblock, J., entered judgment for the plaintiff against Anderson, Nietzke only, concluding that while Anderson, Nietzke was liable to the plaintiff, neither its individual former shareholders nor the firms subsequently formed could be held liable for Anderson, Nietzke's indebtedness. The Court of Appeals, WALSH, P.J., and SULLIVAN and N. A. BAGULEY, JJ., affirmed in part and reversed in part, holding that the former individual defendants were liable to the plaintiff for appropriation of the principal corporate asset, i.e., its goodwill, but limited the amount of his recovery on equitable grounds to his proportional ownership interest in the remaining assets of the corporation, including the value of its goodwill (Docket No. 86187). The plaintiff appeals and the defendants cross appeal.

In an opinion by Justice CAVANAGH, joined by Chief Justice RILEY, and Justices LEVIN, BRICKLEY, ARCHER, and GRIFFIN, the Supreme Court held:

The plaintiff properly may maintain this action, and the directors of the corporation individually may be held liable. The Court of Appeals lacked the authority to invoke principles of equity sua sponte to reduce the plaintiffs damage award, requiring reversal and remand to the trial court for further proceedings.

1. Both § 851(1) of the Business Corporation Act and §§ 3605

and 3620 of the Revised Judicature Act authorize the plaintiff to bring this individual action. Under the circumstances of the case, the Court of Appeals correctly concluded that when the individual defendants appropriated the principal asset of the company to themselves they became jointly and severally liable to the plaintiff under §§ 551 and 855 of the Business Corporation Act.

2. The reduction of damages was improper, however. In the absence of mistake, fraud, or some other legally recognized ground, courts may not relieve parties of what prove to be unfair bargains. It is inappropriate for an appellate court to invalidate the unambiguous terms of contracts made between competent parties who expressed full agreement with their provisions and, in the guise of equity, limit recovery under the agreements to an amount believed to be more fair.

Justice BOYLE concurred in the result only.

Affirmed in part, reversed in part, and remanded.

156 Mich App 330; 401 NW2d 641 (1986) reversed in part.

*Joseph, Wolf & Endean, P.C.* (by *Jeffrey J. Endean*), for the plaintiff.

*Forrest Walpole* for the defendants.

CAVANAGH, J. We are asked to determine whether the Court of Appeals properly applied principles of equity to reduce plaintiff's damages under two contracts with defendant Anderson, Nietzke & Company, Inc., a professional corporation which began the process of dissolution shortly after plaintiff commenced this action. In addition, defendants have filed a cross-claim contending that plaintiff, a shareholder and director in the firm, should not be allowed to maintain this individual action and that the Court of Appeals erred in holding the defendant directors of the corporation individually liable for breach of their fiduciary duty to plaintiff.

We agree with the Court of Appeals that plaintiff may properly maintain this individual action

and that the defendant directors may be held individually liable. We agree with the plaintiff, however, that the Court of Appeals lacked the authority to invoke principles of equity sua sponte to reduce his damage award. Consequently, we reverse the decision of the Court of Appeals in part and remand the case to the trial court for further proceedings.

I

Plaintiff and the individual defendants were shareholders, directors, and employees of Anderson, Nietzke & Company, Inc., a certified public accounting firm with offices in several communities in Huron, Sanilac, Lapeer, and Tuscola Counties.[1] In 1981, the ten shareholders of the corporation, all of whom were employed as accountants with the firm, executed a master employment contract, a buy-sell agreement, and a deferred compensation agreement. The buy-sell agreement and the deferred compensation agreement both contained provisions regarding payments to be made to employees whose employment was terminated. Plaintiff's attempts to enforce the terms of these agreements have given rise to the instant litigation.

The buy-sell agreement required the corporation to purchase a departing employee's stock at a price fixed under a formula set forth in the agreement. This contract also included an arbitration clause. The deferred compensation agreement provided that a discharged employee would also receive payments equal to a percentage of the employee's average monthly salary for fifteen years

[1] The facts regarding the formation of the corporation and its operations during its existence are set forth in greater detail in the published opinion of the Court of Appeals. 156 Mich App 330; 401 NW2d 641 (1986).

after the discharge. Both of these agreements were unfunded.

The corporation terminated plaintiff's employment at a directors' meeting held on December 22, 1982. When the corporation refused to honor its obligation to repurchase plaintiff's stock under the buy-sell agreement, plaintiff instituted arbitration to enforce the agreement. Plaintiff also filed this civil action seeking damages from the corporation for breach of the deferred compensation contract. In addition, plaintiff sought damages from the remaining shareholder-directors for breach of their implied covenant of good faith.

Shortly after this suit was filed, the remaining shareholders voted to dissolve the firm. The noncompetition clauses contained in both the master employment contract and in the buy-sell agreement as well as the clause in the buy-sell agreement requiring the corporation to repurchase a discharged employee's stock were canceled. The remaining shareholder-directors signed documents to dissolve Anderson, Nietzke, and all partners and professional staff resigned. Smaller accounting firms were formed which operated in the former Anderson, Nietzke locations and served many of the former clients of Anderson, Nietzke.

In order to discharge an outstanding obligation to a creditor bank, each of the new firms paid the corporation the appraised value of the tangible assets located in the offices which they occupied. These payments, together with amounts collected on the accounts receivable, satisfied the obligation to the bank but also left Anderson, Nietzke with no remaining tangible assets.

Plaintiff amended his complaint and added as defendants the new corporations and the individual shareholders who had not been shareholders in Anderson, Nietzke. Plaintiff also added additional

counts alleging tortious interference with contract rights, conspiracy, and breach of fiduciary duty.

Meanwhile, on April 13, 1984, the arbitrator entered an award in favor of plaintiff in the amount of $366,002.91 plus ten percent annual interest. The circuit court entered judgment affirming the award on stipulation of the parties. Plaintiff once again amended his complaint to add allegations regarding the buy-sell agreement and the arbitrator's award. Plaintiff alleged that the individual defendants who had been shareholders of Anderson, Nietzke were liable for the corporation's debt under the arbitrator's award.

Following a bench trial, the circuit judge concluded that the corporation had wrongfully breached its obligation under the deferred compensation agreement by refusing to pay plaintiff benefits. Plaintiff was found entitled to a money judgment against the firm in installments of $991.16 for 180 months. The court also concluded, however, that neither the individual former shareholders of Anderson, Nietzke nor the firms which they subsequently formed could be held liable for the firm's indebtedness under either the deferred compensation agreement or the buy-sell agreement. Thus, judgment was entered in plaintiff's favor against Anderson, Nietzke only, a corporation with no remaining assets.

II

Plaintiff appealed in the Court of Appeals, which reversed the circuit court's ruling regarding the liability of the individual defendants. The plaintiff contended that the individual defendants had misappropriated the goodwill of Anderson, Nietzke. The Court of Appeals explained the circuit court's ruling:

In rejecting plaintiff's claim of misappropriation of this corporate asset, the trial judge concluded that "plaintiff failed to show that the firm [sic] client base or goodwill had any value once the former partners resigned from the firm." This conclusion was based on testimony by the expert witnesses of both parties that a third party would not be willing to buy the firm's client base knowing that all of the selling practitioners plan to continue practicing in the same locations. There was abundant evidence that the goodwill of such firms was transferred only in situations where the owners promised not to compete or join the firm of the purchaser. [156 Mich App 343.]

The Court of Appeals concluded that the circuit court's view of the corporation's goodwill was inappropriate, stating:

Here, in valuing the corporation's goodwill, the consideration is not what a stranger to the corporation would have paid for it, but rather what value the goodwill had to the individual defendants who actually procured it. The day before the shareholder-directors resigned, Anderson, Nietzke had a substantial amount of goodwill. The next day, when said shareholder-directors commenced practice with the new firms, each had obtained the dissolved corporation's established clientele, which was of a significant intangible value. The shareholder-directors therefore appropriated the predominant value of Anderson, Nietzke and divided it among themselves to the exclusion of plaintiff. [156 Mich App 343.]

The Court of Appeals concluded that the individual defendants were liable under §§ 551[2] and

---

[2] MCL 450.1551; MSA 21.200(551):

(1) In addition to any other liability imposed by this act or other law upon directors of a corporation, directors who vote for, or concur in, any of the following corporate actions are

855[3] of the Business Corporation Act because of this appropriation of the principal corporate asset:

> These individual defendants are liable to plaintiff under §§ 855 and 551 of the Business Corporation Act, which, when read together, impose joint and several liability on directors who vote in favor of or concur in a corporate decision to distribute assets to a shareholder without paying or adequately providing for all known debts and liabilities of the corporation, whether liquidated or unliquidated, mature or unmatured, direct or indirect, absolute or contingent, secured or unsecured. MCL 450.1855; MSA 21.200(855), MCL 450.1551; MSA 21.200(551). Thus, the trial judge erred when he concluded that the shareholder-directors were not liable to plaintiff as a creditor because he was not a judgment creditor at the time the corporation liquidated its assets. [156 Mich App 344.]

The Court of Appeals noted, however, that the total amount of the judgments under the deferred compensation and buy-sell agreements would result in the plaintiff receiving the largest portion of the firm's assets, even though plaintiff owned only

jointly and severally liable to the corporation for the benefit of its creditors or shareholders, to the extent of any legally recoverable injury suffered by such persons as a result of the action but not to exceed the amount unlawfully paid or distributed:

\* \* \*

(c) Distribution of assets to shareholders during or after dissolution of the corporation without paying, or adequately providing for, all known debts, obligations and liabilities of the corporation.

[3] MCL 450.1855; MSA 21.200(855):

Assets remaining after payment of, or provision for claims against, a corporation shall be distributed to shareholders according to their respective rights and interests. A distribution to shareholders may be made either in cash or in kind, or both.

a 13.6 percent interest in Anderson, Nietzke at the time he was discharged. The Court concluded that plaintiff's recovery should be limited on "equitable grounds" in order to avoid a windfall, reasoning:

> Plaintiff was fired because of alleged inferior job performance. By fortuity, agreements existed which provided for compensation upon termination for any reason. These agreements were unrealistic, created excessive corporate obligations, and were unfunded. By luck, plaintiff happened to be the first participant of the plans to end his employment with the corporation and, thus, reap the benefits of such obligations. In accordance with the general rule that a litigant should not be the beneficiary of his own questionable acts, *Curylo v Curylo,* 104 Mich App 340, 346; 304 NW2d 575 (1981), we find it inequitable to reward plaintiff's claimed poor job performance with a windfall at the expense of his former coshareholders. We therefore limit plaintiff's recovery to his proportional ownership interest (approximately 13.6 percent) in the "remaining assets" of the corporation after the claims of the other creditors are satisfied. "Remaining assets" would include goodwill at the value determined by plaintiff's own expert and the amount due on the promissory notes forgiven by the corporation. [156 Mich App 345-346.]

We granted leave[4] to review the propriety of this equitable reduction of plaintiff's damages and to consider the issues raised in defendants' cross appeal.

### III

We first consider defendants' claim that plaintiff lacks standing to bring an individual action for breach of fiduciary duty. Defendants contend that plaintiff's claim is derivative in nature and that

[4] 430 Mich 898 (1988).

even assuming that defendants breached their duty to plaintiff by dissipating the corporation's goodwill, the liability is owed to the corporate entity and not to an individual creditor or shareholder.

The Court of Appeals rejected this argument, stating:

> [W]e note here that the trial court erred in ruling that plaintiff could not assert these claims in an individual action. The court wrongfully reasoned that a cause of action for wrongful transfer of assets may only be maintained by the corporation. "A stockholder may individually sue corporate directors, officers, or other persons when he has sustained a loss separate and distinct from that of other stockholders generally." 19 Am Jur 2d, Corporations, § 2245, p 147. In the instant case, all nine of the remaining shareholders either personally (forgiveness of indebtedness on promissory notes) or indirectly through their new firms (retention of Anderson, Nietzke's client base-goodwill) received a distribution of corporate assets upon liquidation. As plaintiff was the only shareholder excluded, his injuries were "distinct" and an individual action was appropriate. See also 19 Am Jur 2d, Corporations, §§ 2243-2246. [156 Mich App 344-345.]

We agree that plaintiff may maintain this individual action. In addition to the rationale offered by the Court of Appeals, we reach this conclusion due to specific statutory authority provided for in the Business Corporation Act and Chapter 36 of the Revised Judicature Act.

The Business Corporation Act provides the plaintiff with the authority to bring this individual action. Section 851(1) states:

> (1) After a corporation has been dissolved in any

manner, the corporation, a creditor, or a share-holder may apply at any time to the circuit court of the county in which the registered office of the corporation is located for a judgment that the affairs of the corporation and the liquidation of its assets continue under supervision of the court. The court shall make such orders and judgments as may be required, including, but not limited to, continuance of the liquidation of the corporation's assets by its officers and directors under supervision of the court, or the appointment of a receiver of the corporation to be vested with powers as the court designates to liquidate the affairs of the corporation. [MCL 450.1851(1); MSA 21.200(851)(1).]

Section 3605 of the Revised Judicature Act also provides, in part:

(1) Circuit courts have the power, and actions may be brought in the circuit courts:

(a) to compel persons to account for their conduct in the management and disposition of the corporate funds and corporate property committed to their charge;

(b) to compel persons to pay to the corporation which they represent, and to its creditors, all sums of money and the value of all property which they have acquired to themselves or transferred to others or have lost or wasted by any violation of their duties as directors, managers, trustees, or other officers;

*    *    *

(3) This jurisdiction may be exercised at the instance of the attorney general, prosecuting in the behalf of the people of this state, or at the instance of any creditor of the corporation, or at the instance of any director, trustee, or other officer of the corporation who has a general superintendence of its concerns, or by any stockholder of the corporation. [MCL 600.3605; MSA 27A.3605.]

Similarly, § 3620 of the act provides:

> (1) Whenever any creditor of a corporation seeks to charge the directors, trustees or other superintending officers of such corporation, or the stockholders thereof, on account of any liability created by law, he may bring an action in the circuit courts to enforce such liability. [MCL 600.3620; MSA 27A.3620.]

Clearly, then, plaintiff is authorized by statute to bring this individual action.[5]

Our next inquiry is whether the Court of Appeals properly found a basis for the liability of the individual directors. The defendants urge this Court to reinstate the finding of the trial court that when the individual professionals resigned from the firm, the goodwill of the corporation disappeared. Thus, defendants claim, there was no corporate asset remaining to have been misappropriated when the new accounting firms were created.

We decline to adopt the reasoning of the trial court. As the Court of Appeals stated, the value of the corporation's goodwill must be determined by looking to the value it had to the individual defendants. We find it significant that the liquidated damages provision in the buy-sell agreement provided that departing shareholder-directors who breached the noncompetition clause would be liable to the firm in the amount of fifty percent of the previous year's fees earned from each client

___

[5] See *Muskegon v Amec, Inc,* 62 Mich App 644; 233 NW2d 688 (1975), in which the Court of Appeals permitted a lien creditor to maintain an individual action against the officers and directors of a corporation for the dissipation of corporate assets during the process of dissolution in the face of known debts. The Court reasoned that when § 3605(1) of the Revised Judicature Act is read in conjunction with § 551(1) of the Business Corporation Act, a lien creditor has the statutory authority to bring an individual action against corporate officers and directors.

lured away. This calculation represents the parties' stipulated value for goodwill and also closely coincides with the testimony of plaintiff's expert who valued the corporation's goodwill at fifty percent of its annual revenue.

Although plaintiff honored the covenant not to compete and moved to Arizona, the remaining shareholder-directors canceled the clauses and divided the firm's client base among themselves, while at the same time, the corporation refused to honor its obligations to plaintiff under the buy-sell and deferred compensation agreements. Under these circumstances, the Court of Appeals correctly concluded that when the individual defendants appropriated the principal asset of the accounting firm to themselves, they became jointly and severally liable to plaintiff under §§ 551 and 855 of the Business Corporation Act.

Having determined, then, that the issues raised in defendants' cross appeal are without merit, we turn finally to an examination of the equitable reduction of plaintiff's damage award by the Court of Appeals. Although the remedy created by the Court appears to have been predicated on considerations of fairness, we find the reduction of damages to be improper.

The obligations of the corporation to its shareholder-employees under the deferred compensation and buy-sell agreements appear to have been unwise, creating obligations to departing employees in excess of the corporation's ability to pay. In the absence of mistake, fraud, or some other legally recognized ground, however, courts may not relieve parties of what prove to be unfair bargains. As we explained in *Michigan Medical Service v Sharpe,* 339 Mich 574, 577; 64 NW2d 713 (1954):

Enrichment of plaintiff is not unjust if pursuant to the express agreement of the parties, fairly and honestly arrived at before hand. It is neither unjust, unfair nor inequitable to give effect to an agreement which was not induced by mistake, overreaching, fraud or misrepresentation.

Similarly, in *Allied Supermarkets, Inc v Grocer's Dairy Co,* 391 Mich 729; 219 NW2d 55 (1974), we rejected a request by a party to undo contractual arrangements the party had entered into voluntarily. Although the case arose in a different factual setting, the principles stated are equally applicable here:

There was no fraud alleged or proved in the inducement of plaintiff to invest in this business. The plan of operation in all of its ramifications was known and accepted by plaintiff. There is no overreaching or scheme to freeze out minority stockholders established in this record.

Accordingly the conscience of equity is not moved to interfere. Plaintiff knew what it was buying at the time of its investment. It received what it bargained for. A court of equity may not be used either as a lever to raise a better offer of redemption or as the means of avoiding the consequences of a legal contract now regarded as a bad bargain. [391 Mich 736-737.]

The record in this case reveals that prior to plaintiff's departure from the firm, some of the shareholder-directors had expressed concern about the ability of the corporation to satisfy the substantial financial obligations created by the agreements. The defendants have never claimed, however, that these agreements resulted from mistake or fraud, and the individual defendants, all certified public accountants, certainly understood the terms of the agreements. It is simply inappropriate for an appellate court to invalidate the unambigu-

ous terms of these contracts made between competent parties who expressed their full agreement with their provisions and, in the guise of equity, to limit plaintiff's recovery under the agreements to an amount the reviewing court believes to be more fair.

In this case, the only factor to which the Court of Appeals pointed as justifying its remedy is the claim by the defendants that plaintiff's employment was terminated because of improper performance. We conclude that this assertion by defendants is an improper basis upon which to reduce plaintiff's damages. First, neither the buy-sell agreement nor the deferred compensation agreement includes a provision limiting recovery of benefits when a shareholder's employment is terminated due to improper performance.[6] Second, and more importantly, however, the circuit court found that although trial testimony showed that many of the firm's partners were dissatisfied with plaintiff's accounting work, "insufficient evidence was presented to conclude that plaintiff's CPA work was in fact deficient." The defendants have not challenged the finding on appeal, and the Court of Appeals did not determine the finding to be clearly erroneous.

Consequently, it was error for the Court of Appeals to change the amount of the plaintiff's recovery from that computed under the agreements to an amount equal to the plaintiff's pro-rata share of the assets of the corporation.[7] The

[6] The buy-sell agreement provides that its provisions are triggered "[i]f any Stockholder's employment has terminated (whether or not voluntarily) . . . ." The deferred compensation agreement simply states that "[u]pon termination the Participant . . . shall receive" payments under the plan.

[7] Although the Court of Appeals determined that plaintiff is entitled to an award of $366,002.91 (excluding interest) under the buy-sell agreement and a total of $178,408.50 under the deferred compensa-

mere reference to trial testimony indicating that the individual defendants were dissatisfied with plaintiff's work cannot justify the application of general principles of equity, none of which were ever asserted by defendants to justify a reduction of plaintiff's damage award.

We reverse the judgment of the Court of Appeals in part and remand the case to the Tuscola Circuit Court for further proceedings consistent with the judgment of the Court of Appeals as modified in this opinion. Because the trial court concluded that the individual defendants were not personally liable, there have been no findings as to which votes were wrongful and which way each defendant voted in his capacity as a director of the corporation. On remand, the trial court is to determine the amount of each director's liability to plaintiff.

RILEY, C.J., and LEVIN, BRICKLEY, ARCHER, and GRIFFIN, JJ., concurred with CAVANAGH, J.

BOYLE, J., concurred in the result only.

tion plan, the Court essentially placed a ceiling on plaintiff's recovery at the amount of his proportional ownership interest in the "remaining assets" of the corporation. We have already determined that the Court's equitable reduction of plaintiff's damages was improper. In addition, we note that plaintiff's recovery is limited by § 551 of the Business Corporation Act. Plaintiff's ability to recover from the individual defendants due to their actions taken as directors may not "exceed the amount unlawfully paid or distributed." MCL 450.1551(1); MSA 21.200(551)(1). Subsection (3) of § 551 imposes liability on shareholders limited to "the amount accepted or received by" them.