**Michigan Supreme Court**
**Lansing, Michigan**

# Syllabus

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

MURPHY v INMAN

Docket No. 161454. Argued on application for leave to appeal December 9, 2021. Decided April 5, 2022.

Leslie J. Murphy, a former shareholder of Covisint Corporation, brought an action in the business division of the Oakland Circuit Court against Samuel M. Inman III and other former Covisint directors, alleging that they had breached their statutory and common-law fiduciary duties owed to plaintiff when Covisint entered into a cash-out merger agreement with OpenText Corporation in 2017. Defendants moved for summary disposition, arguing that plaintiff lacked standing because his claim was derivative in nature and he did not satisfy the requirements for bringing a derivative shareholder action under MCL 450.1493a. Plaintiff responded that he was permitted to bring a direct shareholder action under MCL 450.1541a and that defendants owed common-law fiduciary duties to plaintiff as a shareholder. The trial court, Wendy L. Potts, J., granted defendants' motion for summary disposition, ruling that plaintiff lacked standing to bring a direct shareholder action because he could not demonstrate an injury to himself without showing injury to the corporation, nor could he show harm separate and distinct from that of other Covisint shareholders. The court also rejected plaintiff's common-law theory because it arose out of the same alleged injury as his statutory claim. The Court of Appeals, GLEICHER, P.J., and GADOLA and LETICA, JJ., affirmed in an unpublished per curiam opinion issued April 30, 2020. Plaintiff applied for leave to appeal, and the Supreme Court ordered and heard oral argument on whether to grant the application or take other action. 507 Mich 906 (2021).

In a unanimous opinion by Justice ZAHRA, the Supreme Court, in lieu of granting leave to appeal, *held*:

Corporate directors owe common-law fiduciary duties directly to the shareholders of the corporation, and these duties were not abrogated by the enactment of the Business Corporation Act (BCA), MCL 450.1101 *et seq*. In the context of a cash-out merger transaction in which the decision to sell the target corporation has been made, directors must disclose to the shareholders all material facts within their knowledge regarding the merger and must exercise their fiduciary duties to the shareholders with one goal in mind: to maximize shareholder value by securing the highest value share price reasonably available. In order to distinguish between direct and derivative actions brought by shareholders of a corporation in Michigan, courts must ask (1) who suffered the alleged harm, and (2) who would receive the benefit of any remedy recovered. If the

answer to both questions is the corporation, the action is derivative. If the shareholder suffers the harm independently from the corporation and receives the remedy rather than the corporation, the action is direct. Under that framework, a shareholder who alleges that the directors of the target corporation breached their fiduciary duties owed to the shareholder in handling a cash-out merger may bring that claim as a direct shareholder action. The Court of Appeals erred by concluding that plaintiff's claim was derivative.

1. Corporate directors owe their shareholders fiduciary duties under Michigan common law that exist independently of the duties prescribed in the BCA. A fiduciary relationship is one in which one person is under a duty to act for the benefit of the other on matters within the scope of the relationship. Directors of a corporation are understood to be fiduciaries because they are required to use their acumen for the corporation's benefit rather than their own. The BCA provides in MCL 450.1541a that directors must discharge their duties in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner they reasonably believe to be in the best interests of the corporation. While this provision does not address whether directors owe fiduciary duties directly to the shareholders, such duties have been held to exist under Michigan's common law. The essence of these duties is to produce the best possible return for the shareholders' investment, although courts' expectations of directors acting as fiduciaries depend heavily upon context. The Michigan Supreme Court has not addressed directors' fiduciary duties to their shareholders in sale-of-control transactions, but the courts in Delaware, which is commonly understood to be the leading state on matters of corporate law, have held that once the decision to sell the target corporation has been made, directors of the target corporation no longer perform purely managerial duties on behalf of the corporation; instead, they are charged with negotiating the share price that the target corporation's shareholders will receive as cash. Thus, in the context of a cash-out merger transaction, directors of the target corporation must disclose all material facts regarding the merger and must discharge their fiduciary duties to maximize shareholder value by securing the highest value share price reasonably available. This is consistent with the understanding that directors' fiduciary duties run primarily to the shareholders of a corporation and that the essence of those duties is to obtain the best possible return on the shareholders' investments. Further, in the context of a cash-out merger or other sale-of-control transaction, the sale or dissolution of the target corporation is a foregone conclusion, and the long-term interests of the target corporation as an entity are therefore of no concern. In this case, plaintiff's challenge to the validity and fairness of the merger assumes that the sale of Covisint was a foregone conclusion, and thus defendants' business decision to sell Covisint in the first place was not at issue.

2. The Legislature did not abrogate the common-law fiduciary duties that corporate directors owe their shareholders when it enacted the BCA. The Michigan Supreme Court has continued to recognize that directors owe fiduciary duties to their shareholders since the enactment of the BCA, and the statutory history of the BCA and its predecessor, the General Corporation Act, 1931 PA 327, supports a conclusion that the Legislature did not abrogate these common-law duties. The Legislature has never created or codified a direct cause of action for shareholders, and it has never expressly or even impliedly rejected the common-law fiduciary duties running from corporate directors to their shareholders. Therefore, none of the changes to MCL 450.1541a(1) or its predecessor can reasonably be read to abrogate corporate directors' common-law fiduciary duties to their shareholders. Contrary to defendants' argument, the BCA does not set forth a

comprehensive legislative scheme in which the Legislature intended the statutory duties codified in MCL 450.1541a(1) to supersede and replace all common-law fiduciary duties. That provision discusses the standard by which corporate directors are to discharge their managerial duties owed to the corporation, but it is silent as to the fiduciary duties that corporate directors owe their shareholders. The Legislature is presumed to know that duties to shareholders exist at common law, and absent a clear legislative intent, it cannot be presumed that the Legislature, in enacting the BCA, exercised its authority to abrogate those duties.

3. While corporate directors and officers owe fiduciary duties to the shareholders, a suit to enforce corporate rights or to redress or prevent injury to the corporation must be brought in the name of the corporation and not that of a stockholder, officer, or employee. Michigan courts have recognized two exceptions to this general rule: (1) where the individual has sustained a loss separate and distinct from that of other stockholders generally, and (2) where the individual shows a violation of a duty owed directly to the individual that is independent of the corporation. The Court of Appeals correctly recognized that a suit to enforce corporate rights or to redress injury to the corporation is a derivative suit; although it may be brought by the shareholder, the action itself belongs to the corporation. If a claim is derivative, a shareholder has no standing to sue except on behalf of the corporation, and the shareholder must comply with numerous statutory requirements before bringing that action. A direct action, on the other hand, belongs to the shareholder; it seeks redress for harm done to the shareholder or to enforce a personal right belonging to the shareholder independently from the corporation. In other words, when the shareholder suffers the harm or seeks to enforce a personal right, the general rule articulated by the Court of Appeals that an action is derivative does not apply. However, the general rule-exception framework that Michigan courts have applied to distinguish direct and derivative actions brought by shareholders assumes that the claim belongs to the corporation and then inquires whether an exception exists to permit the claim to be brought directly and thus overlooks the fundamental inquiry at the heart of the distinction between direct and derivative shareholder actions: the nature of the wrong alleged by the complaining shareholder. Accordingly, the Supreme Court adopted the framework set forth in *Tooley v Donaldson, Lufkin & Jenrette, Inc*, 845 A2d 1031, 1033 (Del, 2004), which held that the proper analytical distinction between direct and derivative actions turns solely on who suffered the alleged harm and who would receive the benefit of any recovery or other remedy. Under this framework, a stockholder must demonstrate that the duty breached was owed to the stockholder and that the stockholder can prevail without showing an injury to the corporation. The decision in *Christner v Anderson, Nietzke & Co, PC*, 433 Mich 1; 444 NW2d 779 (1989), did not prevent the Court from adopting the *Tooley* framework for distinguishing between direct and derivative actions.

4. Under the *Tooley* framework, plaintiff has standing to bring a direct shareholder action against defendants for an alleged breach of their common-law fiduciary duties in handling the Covisint-OpenText merger. Plaintiff alleged that defendants breached their fiduciary duties in handling the cash-out merger transaction by negotiating an inadequate and unfair price for outstanding Covisint stock, engaging in self-dealing while arranging the merger, and issuing a materially incomplete and misleading proxy statement that omitted information necessary to enable the shareholders to cast an informed vote. These allegations challenged the validity and fairness of the merger itself, and any harm resulting from a breach of defendants' fiduciary duties in handling the merger would have injured plaintiff directly as a shareholder. Further, assuming

plaintiff's allegations have merit, any remedy for defendants' breach of their fiduciary duties would flow directly to plaintiff. In a cash-out merger transaction, the target corporation itself does not receive any of the cash that constitutes the merger consideration. Rather, the acquiring corporation delivers the cash directly to the shareholders of the target corporation. Therefore, if there is a discrepancy between the amount the shareholders received and the amount found to be a fair value for their shares, that difference would belong to the shareholders, not the target corporation. To conclude that plaintiff's claim is derivative would necessarily mean that Covisint was harmed and should recover any remedy. Such a conclusion defies logic because Covisint suffered no harm and is now a wholly owned subsidiary of OpenText. The lower courts' holding that plaintiff's claim was derivative failed to appreciate that, once the merger was consummated, plaintiff no longer owned stock in Covisint and that any derivative action belonging to Covisint passed to OpenText; therefore, plaintiff simply could not file a derivative action on Covisint's behalf. Further, labeling plaintiff's claim as derivative would result in a windfall for OpenText, as it would have paid a reduced price for the Covisint shares and received a damage award payable to itself as a result of defendants' breach, and plaintiff would have been left with no avenue for relief.

Reversed and remanded to the Oakland County business court for further proceedings.

# OPINION

Chief Justice:
  Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

FILED April 5, 2022

STATE OF MICHIGAN

SUPREME COURT

LESLIE J. MURPHY,

      Plaintiff-Appellant,

v

No. 161454

SAMUEL M. INMAN, III, JOHN F. SMITH,
BERNARD M. GOLDSMITH, WILLIAM O.
GRABE, LAWRENCE DAVID HANSEN,
ANDREAS MAI, JONATHAN YARON,
and ENRICO DIGIROLAMO,

      Defendants-Appellees.

BEFORE THE ENTIRE BENCH

ZAHRA, J.

This litigation arises from a cash-out merger agreement[1] executed between Covisint

Corporation and OpenText Corporation. Leslie J. Murphy, a former shareholder of

---

[1] In a simple two-party corporate merger, one corporate entity (the "acquiring" corporation) succeeds to all rights, privileges, and liabilities of the other corporate entity (the "target"

Covisint, brought this action against the eight named defendants in this case, all of whom are former Covisint directors, alleging that they breached their statutory and common-law fiduciary duties owed to plaintiff with regard to the merger. The questions before this Court are: (1) whether corporate directors owe fiduciary duties directly to the shareholders of the corporation under Michigan law and, if so, what those duties entail with respect to a cash-out merger transaction; and (2) whether a shareholder alleging that corporate directors breached their fiduciary duties in handling a cash-out merger must bring that claim as a direct or derivative[2] shareholder action.

We hold that corporate directors owe common-law fiduciary duties directly to the shareholders of the corporation. In the context of a cash-out merger transaction in which the decision to sell the target corporation has been made, directors must disclose to the shareholders all material facts within their knowledge regarding the merger and must

_____

corporation), whose existence terminates upon completion of the merger; the corporation resulting from the merger is the "surviving corporation." See MCL 450.1724; Schulman, Moscow, and Lesser, *Michigan Corporation Law & Practice* (rev ed, 2022 supp), §§ 7.01 to 7.04, 7.06. Shareholders of the extinct target corporation are offered consideration for their shares, including shares, bonds, or other securities in the surviving corporation, or cash. See MCL 450.1701(2)(c). Unlike a merger involving an exchange of shares or other securities, this case involves a "cash-out" merger transaction, in which shareholders of the target corporation must accept cash payment for their shares, thereby eliminating their interest in the target corporation. See *Black's Law Dictionary* (11th ed), p 1184 (defining "cash merger"). The mechanics of cash-out mergers under the Business Corporation Act, MCL 450.1101 *et seq*., will be discussed in further detail later in this opinion.

[2] A "derivative proceeding" is a civil suit brought "in the right of" the corporation to redress harm done to the corporation rather than the individual shareholder. MCL 450.1491a(1). See also *Black's Law Dictionary* (11th ed) (defining "derivative action"). A direct action, on the other hand, is an action brought by a shareholder, or a group of shareholders, to enforce a personal right or seek redress for harm done to the shareholder independent of the corporation. See 19 Am Jur 2d, Corporations, § 1923, pp 94-95.

exercise their fiduciary duties to the shareholders with one goal in mind: to maximize shareholder value by securing the highest value share price reasonably available. We conclude that directors' common-law fiduciary duties to shareholders were not abrogated by the enactment of the Business Corporation Act (BCA).[3] We also hold that a shareholder who alleges that the directors of the target corporation breached their fiduciary duties owed to the shareholder in handling a cash-out merger may bring that claim as a direct shareholder action. The Court of Appeals therefore erred by concluding that plaintiff's claim was derivative. For reasons more fully developed in this opinion, we reverse the decision of the Court of Appeals and remand this case to the Oakland County business court for further proceedings.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On June 5, 2017, Covisint, a corporation headquartered in Southfield, Michigan, publicly announced that it had entered into a merger agreement with OpenText. Under this agreement, OpenText acquired all outstanding shares of Covisint stock for $2.45 per share and a wholly owned subsidiary of OpenText merged with and into Covisint.[4] Covisint issued a preliminary proxy statement on June 15, 2017, and a definitive proxy statement on June 26, 2017, both of which detailed the transaction and the negotiation process leading up to the merger agreement.

---

[3] MCL 450.1101 *et seq.*

[4] In this way, Covisint became the wholly owned subsidiary of OpenText. This type of merger is known as a "reverse triangular merger," in which the target corporation merges into a wholly owned subsidiary of the acquiring corporation created for the purpose of the merger. *Black's Law Dictionary* (11th ed), p 1185.

On June 30, 2017, before the merger was consummated, plaintiff filed this action in the business court of the Oakland Circuit Court.[5] Plaintiff alleged that defendants breached their fiduciary duties of care, loyalty, good faith, independence, and candor owed to all Covisint shareholders. Plaintiff sought damages and rescission of the merger agreement.

On July 25, 2017, a majority of Covisint shareholders voted to approve the merger, which was consummated the next day. Plaintiff then filed an amended complaint, raising the same claim for breach of fiduciary duty. More specifically, plaintiff alleged, in relevant part, that defendants failed to maximize shareholder value when they sold Covisint at an inadequate and unfair price; engaged in a flawed sales process by favoring OpenText, neglecting other bidders, and failing to adequately pursue higher offers; acted in their self-interest and received personal financial benefits as a result of the merger; and breached their duty of candor when they issued a materially incomplete and misleading proxy statement that omitted information necessary to enable the shareholders to cast an informed vote.[6]

---

[5] At least three other lawsuits were filed individually and on behalf of a putative class of Covisint shareholders in the United States District Court for the Eastern District of Michigan related to Covisint-OpenText merger. According to the parties' filings in this case, those federal lawsuits were dismissed without prejudice as to the putative class, and notice to the putative class of the dismissal was not required. See *In re Covisint Corp Shareholder Litigation*, unpublished order of the United States District Court for the Eastern District of Michigan, entered September 28, 2017 (Case Nos. 2:17-cv-11958-RHC-DRG, 2:17-cv-1200-SJM-APP, and 2:17-cv-12183-SJM-RSW), p 4.

[6] Defendants unsuccessfully attempted to remove this action to federal court. *Murphy v Inman*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued February 21, 2018 (Case No. 17-1329).

Defendants moved for summary disposition, arguing that plaintiff lacked standing because his claim was derivative in nature and he did not satisfy the requirements for bringing a derivative shareholder action under MCL 450.1493a.[7] Plaintiff responded that he was permitted to bring a direct shareholder action under MCL 450.1541a[8] and, additionally, that defendants owed common-law fiduciary duties to plaintiff as a shareholder such that he could bring a direct shareholder action. Defendants replied that plaintiff's action is derivative regardless of how he characterized his claim.

The trial court granted defendants' motion for summary disposition, holding that plaintiff lacked standing to bring a direct shareholder action. The trial court determined that plaintiff's allegations—that defendants' breach of their fiduciary duties in handling the merger resulted in plaintiff receiving an inadequate and unfair price for his shares—affected both plaintiff and Covisint in the same manner. The trial court held that because plaintiff could not demonstrate an injury to himself without showing injury to the corporation, nor could he show harm separate and distinct from that of other Covisint shareholders, plaintiff's action was derivative. The court also rejected plaintiff's common-law theory because it arose out of the same alleged injury as his statutory claim. Because

---

[7] MCL 450.1493a requires a shareholder to make a written demand upon the corporation to take suitable action 90 days before bringing a derivative claim unless certain circumstances, none of which are relevant here, exist. There is no dispute that plaintiff did not comply with this demand requirement.

[8] MCL 450.1541a(1)(a) to (c) provide that corporate officers and directors shall discharge their duties "[i]n good faith," "[w]ith the care an ordinarily prudent person in a like position would exercise under similar circumstances," and "[i]n a manner [they] reasonably believe[] to be in the best interests of the corporation."

5

plaintiff failed to comply with the requirements for bringing a derivative action, the trial court dismissed his claim.

In an unpublished per curiam opinion, the Court of Appeals affirmed, agreeing with the trial court that plaintiff's action was derivative under both MCL 450.1541a and the common law.[9] Plaintiff sought leave to appeal in this Court. We directed the Clerk to schedule oral argument on the application to address:

> (1) whether, with respect to Covisint Corporation's cash-out merger with OpenText Corporation, corporate officers and directors owed cognizable common law fiduciary duties to the corporation's shareholders independent of any statutory duty; and (2) whether the appellant has standing to bring a direct cause of action under either the common law or MCL 450.1541a.[10]

## II. STANDARD OF REVIEW AND APPLICABLE RULES OF STATUTORY INTERPRETATION

This Court reviews de novo a trial court's decision on a motion for summary disposition.[11] Whether a party has standing is a question of law reviewed de novo.[12] This case also requires us to interpret applicable provisions of the BCA and determine whether the Legislature has abrogated, amended, or preempted the common law. These are also questions of law reviewed de novo.[13]

---

[9] *Murphy v Inman*, unpublished per curiam opinion of the Court of Appeals, issued April 20, 2020 (Docket No. 345758).

[10] *Murphy v Inman*, 507 Mich 906 (2021) (Docket No. 161454).

[11] *Mich Ass'n of Home Builders v City of Troy*, 504 Mich 204, 211; 934 NW2d 713 (2019).

[12] *Id*. at 212.

[13] *Dep't of Agriculture v Appletree Mktg, LLC*, 485 Mich 1, 7; 779 NW2d 237 (2010).

6

"The role of this Court in interpreting statutory language is to ascertain the legislative intent that may reasonably be inferred from the words in a statute."[14]   Our analysis must focus on "the statute's express language, which offers the most reliable evidence of the Legislature's intent.   When the statutory language is clear and unambiguous, judicial construction is limited to enforcement of the statute as written."[15]

## III.  ANALYSIS

Our analysis proceeds in four parts.  First, we discuss the mechanics of a cash-out merger transaction.  Second, we identify the fiduciary duties at issue and their source under Michigan common law.  Third, we explain our conclusion that the Legislature's enactment of the BCA did not abrogate those common-law fiduciary duties.  Finally, we clarify the distinction between direct and derivative shareholder actions under Michigan law and, applying that framework, conclude that plaintiff has standing to bring a direct shareholder action against defendants for an alleged breach of their common-law fiduciary duties owed to him in their handling of the cash-out merger agreement with OpenText.

## A.  CASH-OUT MERGER TRANSACTION

This case involves a "cash-out merger," in which the shareholders of the target corporation must accept cash for their shares and lose their ownership interest in the target

---

[14] *Sanford v Michigan*, 506 Mich 10, 14-15; 954 NW2d 82 (2020) (quotation marks and citation omitted).

[15] *Id*. at 15 (quotation marks and citations omitted).

7

corporation.[16]  To initiate a merger under the BCA, the board of directors for each constituent corporation must adopt a merger plan.[17]  The plan must include, among other things, "the manner and basis of converting the shares of each constituent corporation into shares, bonds, or other securities of the surviving corporation, or into cash or other consideration . . . ."[18]  This conversion constitutes the consideration used to facilitate the merger, i.e., the "merger consideration."  The amount and form of the merger consideration is a matter of negotiation between the directors of the corporations being merged.  After the plan's adoption by each corporation's board of directors, the plan is generally submitted to the shareholders of each corporation for approval.[19]  Once the plan is approved and the merger takes effect, the target corporation ceases to exist and the outstanding shares of the target corporation are converted into the merger consideration provided for in the merger plan.[20]  All property and rights of the target corporation, including any existing derivative claims, pass to the surviving corporation once the merger is consummated.[21]  In this case,

---

[16] *Black's Law Dictionary* (11th ed), p 1184 (defining "cash merger"); 2 McLaughlin on Class Actions (18th ed), § 9:5 ("Upon consummation of a merger, . . . shareholders in the target company generally are cashed-out and lose their status as shareholders.").

[17] MCL 450.1701(2).

[18] MCL 450.1701(2)(c).

[19] MCL 450.1703a(1).

[20] MCL 450.1724(1)(a) and (g).

[21] MCL 450.1724(1)(b).  Although a target shareholder may have a right to dissent from the merger and obtain payment of fair value for his or her shares, see MCL 450.1762(1)(a), whether plaintiff possessed dissenters' rights is not before us.  And, in any event, the BCA does not provide shareholders with dissenters' rights where either the target shares are

8

plaintiff received merger consideration from OpenText of $2.45 for each Covisint share he owned. His ownership in Covisint ceased, and Covisint became a wholly owned subsidiary of OpenText.

## B. SOURCE OF CORPORATE DIRECTORS' FIDUICARY DUTIES

As a former shareholder of Covisint, plaintiff argues that the named defendants, all of whom are former members of Covisint's board of directors, owed him fiduciary duties related to the cash-out merger agreement with OpenText under § 541a(1) of the BCA and Michigan's common law.[22] Defendants respond that the BCA superseded and replaced the common law such that no common-law fiduciary duties exist independently of § 541a(1). Amici curiae have also submitted briefs, advocating that directors owe their shareholders common-law fiduciary duties that were not abrogated by the BCA. We conclude that corporate directors owe their shareholders fiduciary duties under Michigan common law that exist independently of the duties prescribed in the BCA.

A fiduciary relationship is one "in which one person is under a duty to act for the benefit of the other on matters within the scope of the relationship."[23] Directors of a corporation are understood to be fiduciaries because they are required to use their "acumen

---

listed on the national securities exchange or the merger consideration is cash. See MCL 450.1762(2)(a) and (b). Both of those conditions are met here.

[22] Given that only directors can vote to adopt a merger plan, our inquiry is limited to the fiduciary duties owed by directors in the context of a cash-out merger. We need not address fiduciary duties owed by corporate officers.

[23] *In re Karney Estate*, 468 Mich 68, 74 n 2; 658 NW2d 796 (2003) (quotation marks and citation omitted).

for [the] corporation's benefit rather than [their] own . . . ."[24] The BCA provides that "[t]he business and affairs of a corporation shall be managed by or under the direction of its board . . . ."[25] MCL 450.1541a sets forth the manner in which directors are to discharge their duties, providing, in relevant part:

> (1) A director or officer shall discharge his or her duties as a director or officer including his or her duties as a member of a committee in the following manner:
>
> (a) In good faith.
>
> (b) With the care an ordinarily prudent person in a like position would exercise under similar circumstances.
>
> (c) In a manner he or she reasonably believes to be in the best interests of the corporation.[26]

While § 541a(1) clearly recognizes directors' fiduciary relationship to the "corporation" as an entity, nowhere in the statute's plain text does it address whether directors owe fiduciary duties directly to the "shareholder[s]" of the corporation.[27] However, we have understood such duties to exist in our state's common law:

---

[24] *Thomas v Satfield Co*, 363 Mich 111, 123; 108 NW2d 907 (1961).

[25] MCL 450.1501.

[26] Although MCL 450.1545a addresses the duty of loyalty in the context of transactions in which corporate directors or officers have an interest, plaintiff does not allege a breach of defendants' fiduciary duties under § 545a.

[27] The BCA defines "corporation" simply as "a corporation formed under this act, or existing on January 1, 1973 and formed under any other statute of this state for a purpose for which a corporation may be formed under this act," MCL 450.1106(1), and defines "shareholder" as "a person that holds units of proprietary interest in a corporation and is considered to be synonymous with 'member' in a nonstock corporation," MCL

10

The rule is thoroughly embedded in the general jurisprudence of both America and England that *the status of directors is such that they occupy a fiduciary relation toward the corporation and its stockholders*, and are treated by courts of equity as trustees. They are regarded as agents entrusted with the management of the corporation, *for the benefit of the stockholders collectively*, and as occupying a fiduciary relation in the sense that the relation is one of trust; and are held to the utmost good faith in their dealings with the corporation. They must manage the affairs of the corporation solely in the interest of the corporation.[28]

As we stated in *Dodge v Ford Motor Company*, "A business corporation is organized and carried on primarily for the profit of the stockholders. The powers of the directors are to be employed for that end."[29] In other words, under this state's common law, directors owe fiduciary duties first and foremost to the shareholders of the corporation; their roles within, and obligations to, the corporation cannot be properly understood without first recognizing this fundamental tenet of corporate law in Michigan.

Having recognized the existence of a fiduciary relationship between a corporation's directors and its shareholders under Michigan common law, we must next determine the

---

450.1109(2). Although a corporation is composed of shareholders, the two exist separately for purposes of the BCA.

[28] *Thomas*, 363 Mich at 118 (emphasis added; quotation marks and citation omitted), citing *LA Young Spring & Wire Corp v Falls*, 307 Mich 69, 101; 11 NW2d 329 (1943). See also *Wagner Electric Corp v Hydraulic Brake Co*, 269 Mich 560, 564; 257 NW 884 (1934) ("Under the law of this State and elsewhere, the directors of a private corporation stand in a fiduciary relation to its stockholders, and are bound to act in good faith for the benefit of the corporation."); *Thompson v Walker*, 253 Mich 126, 134-135; 234 NW 144 (1931) ("The officers and directors of a corporation have its affairs committed to their charge upon the trust and confidence they will be cared for and managed, within the limits of the powers conferred by law upon the corporation, for the common benefit of all the stockholders."), citing *Ten Eyck v Pontiac, O & PAR Co*, 74 Mich 226, 232; 41 NW 905 (1889).

[29] *Dodge v Ford Motor Co*, 204 Mich 459, 507; 170 NW 668 (1919).

scope of this relationship. Colloquially, directors are required to act with due care, with loyalty, and in good faith.[30] These amorphous concepts do not, strictly speaking, encapsulate all that is required of directors acting in their fiduciary capacity. For example, directors are required to exercise candor toward the corporation's shareholders and must disclose all material facts within their knowledge that may influence shareholder action.[31] And, given that a corporation is carried on primarily for the profit of its shareholders, we have stated that the "essence" of directors' fiduciary duties is to "produce to each stockholder the best possible return for his [or her] investment."[32]

Of course, courts' expectations of directors acting as fiduciaries depend heavily upon context. Although this Court has not had occasion to address directors' fiduciary duties to their shareholders in sale-of-control transactions, caselaw from Delaware

---

[30] See *Ten Eyck*, 74 Mich at 232 (explaining that corporate directors are required to act "for the common benefit of the stockholders, . . . in the utmost good faith, and in accepting the office they impliedly undertake to give to the enterprise the benefit of their best care and judgment, and exercise the powers conferred solely in the interest of the corporation"); Schulman, § 5.09[A], p 5-21 ("Directors and officers are frequently said to serve in a fiduciary relationship to the corporation and its shareholders. This fiduciary relationship includes a duty of care and a duty of loyalty.").

[31] *Reed v Pitkin*, 231 Mich 621, 627; 204 NW 750 (1925) (holding that defendant—a stockholder, member of the board of directors, secretary, treasurer, and general manager of the corporation—"[a]s agent and trustee [had a] legal duty to act towards the other stockholders in entire good faith, and he was bound to disclose to them all facts within his knowledge which were or might have been material to them, or which might influence them in their action") (quotation marks and citations omitted). See also *Lumber Village, Inc v Siegler*, 135 Mich App 685, 695; 355 NW2d 654 (1984) ("[T]here is an affirmative duty to disclose where the parties are in a fiduciary relationship.").

[32] *Thompson*, 253 Mich at 135, citing *Miner v Belle Isle Ice Co*, 93 Mich 97, 116; 53 NW 218 (1892).

12

provides meaningful guidance.[33]  The seminal case discussing directors' duties in sale-of-control transactions is *Revlon, Incorporated v MacAndrews & Forbes Holdings, Incorporated*.[34]  In that case, the Revlon board of directors used several defensive measures to fend off takeover attempts.  Eventually, the sale of Revlon became inevitable.  The Delaware Supreme Court explained that once it became clear that Revlon was for sale, its board of directors was no longer tasked with preserving Revlon as a corporate entity: "The directors' role changed from defenders of the corporate bastion to auctioneers charged with getting the best price for the stockholders at a sale of the company."[35]  Thus, "[i]n the sale of control context, the directors must focus on one primary objective—to secure the transaction offering the best value reasonably available for the stockholders—and they must exercise their fiduciary duties to further that end."[36]  To be sure, " '*Revlon* neither creates a new type of fiduciary duty in the sale-of-control context nor alters the nature of the fiduciary duties that generally apply.  Rather, *Revlon* emphasizes that the board must

---

[33] Delaware is commonly understood to be the leading state on matters of corporate law, and although not binding, the opinions of its courts on such matters may be persuasive.

[34] *Revlon, Inc v MacAndrews & Forbes Holdings, Inc*, 506 A2d 173 (Del, 1986).

[35] *Id*. at 182.

[36] *Paramount Communications Inc v QVC Network Inc*, 637 A2d 34, 44 (Del, 1994).  See also *Plaza Securities Co v Fruehauf Corp*, 643 F Supp 1535, 1543 (ED Mich, 1986) ("In a contest for corporate control, when directors have determined that it is inevitable that the corporation be sold, . . . the directors' cardinal fiduciary obligation to the corporation and its shareholders is to ensure 'maximization of the company's value at a sale for the stockholders' benefit.' "), quoting *Revlon*, 506 A2d at 182.

perform its fiduciary duties in the service of a specific objective: maximizing the sale price of the enterprise.' "[37]

Similarly, in a cash-out merger transaction in which the decision to sell the target corporation has been made, directors of the target corporation no longer perform purely managerial duties on behalf of the corporation; instead, they are charged with negotiating the share price that the target corporation's shareholders will receive as cash.[38] Thus, in the context of a cash-out merger transaction, directors of the target corporation must disclose all material facts regarding the merger and must discharge their fiduciary duties to maximize shareholder value by securing the highest value share price reasonably

---

[37] *RBC Capital Markets, LLC v Jervis*, 129 A3d 816, 849 (Del, 2015), quoting *Malpiede v Townson*, 780 A2d 1075, 1083 (Del, 2001).

[38] As Maryland's highest court has explained:

> When directors undertake to negotiate a price that shareholders will receive in the context of a cash-out merger transaction, . . . they assume a different role than solely managing the business and affairs of the corporation. Duties concerning the management of the corporation's affairs change after the decision is made to sell the corporation. Beyond that point, in negotiating a share price that shareholders will receive in a cash-out merger, directors act as fiduciaries on behalf of the shareholders. As a result of the confidence and trust reposed in them during the price negotiation, their ability to affect significantly the financial interests of the shareholders, and the inherent conflict of interest that arises between directors and shareholders in any change-of-control situation, the common law imposes on those directors duties to maximize shareholder value and make full disclosure of all material facts concerning the merger to the shareholders. [*Shenker v Laureate Ed, Inc*, 411 Md 317, 338-339; 983 A2d 408 (2009) (quotation marks and some citations omitted), citing *Revlon*, 506 A2d at 182, and *Paramount*, 637 A2d at 48-49.]

14

available.[39]  This is consistent with our understanding that directors' fiduciary duties run primarily to the shareholders of a corporation and that the essence of those duties is to obtain the best possible return on the shareholders' investments.

We emphasize, however, the narrow context in which the instant case is presented. Unlike our decision in *Dodge*,[40] which involved this Court's review of the directors' decision to reinvest profits into a thriving corporation rather than declare a sizable dividend to the shareholders, the sale or dissolution of the target corporation in a cash-out merger or other sale-of-control transaction is a foregone conclusion: the long-term interests of the target corporation as an entity are of no concern.  Instead, the sole focus of the board of directors is to maximize the sale price of the target corporation for the *shareholders*' benefit—not to preserve the target corporation, reinvest corporate profits for long-term returns, or further any other purpose aimed at serving the interests of the *corporation*.  Here, plaintiff alleges that defendants breached their fiduciary duties owed to him in handling the cash-out merger such that he may bring a direct shareholder action.  This challenge to the validity and fairness of the merger assumes that the sale of Covisint was a foregone conclusion.  Therefore, we are not tasked with reviewing defendants' business decision to sell Covisint in the first place.

Accordingly, we conclude that, under Michigan common law, corporate directors owe fiduciary duties directly to their shareholders.  In the context of a cash-out merger transaction in which the decision to sell the target corporation has been made, directors of

---

[39] See *Shenker*, 411 Md at 339-341.

[40] *Dodge*, 204 Mich 459.

the target corporation must disclose all material facts to shareholders regarding the merger and must exercise their fiduciary duties with one goal in mind: maximizing shareholder value by securing the highest value share price reasonably available.[41]

## C. ABROGATION

Having concluded that corporate directors owe their shareholders certain fiduciary duties under this state's common law, this Court, as "the principal steward of Michigan's common law,"[42] must determine whether the Legislature abrogated these duties when it enacted the BCA. "The common law remains in force until 'changed, amended or repealed.' "[43] The Legislature may alter or abrogate the common law through its legislative authority.[44] Yet the mere existence of a statute does not necessarily mean that the Legislature has exercised this authority. We presume that the Legislature "know[s] of the

---

[41] The Delaware Supreme Court has stated that the board of directors' "fiduciary duty of disclosure, like the board's duties under *Revlon* and its progeny, is not an independent duty but the application in a specific context of the board's fiduciary duties of care, good faith, and loyalty." *RBC Capital Markets*, 129 A3d at 849 (quotation marks, citations, and brackets omitted). We do not purport to define the precise contours of the common-law fiduciary duties that directors owe to the shareholders of the corporation or how those duties relate to one another. To attempt to do so would be an exercise in futility given the complexity of these fluid concepts in the dynamic world of corporate law. For purposes of this case, it is enough to conclude that, under this state's common law, corporate directors owe fiduciary duties directly to the shareholders and, in the context of a cash-out merger transaction, are required to discharge those duties toward a specific objective: maximizing the sale price of the target corporation for the benefit of its shareholders.

[42] *Price v High Pointe Oil Co, Inc*, 493 Mich 238, 258; 828 NW2d 660 (2013) (quotation marks and citation omitted).

[43] *Velez v Tuma*, 492 Mich 1, 11; 821 NW2d 432 (2012), quoting Const 1963, art 3, § 7.

[44] *Rafaeli, LLC v Oakland Co*, 505 Mich 429, 473; 952 NW2d 434 (2020); Const 1963, art 4, § 1.

16

existence of the common law when it acts."[45]  Therefore, we have stated that "[w]e will not lightly presume that the Legislature has abrogated the common law" and that "the Legislature should speak in no uncertain terms when it exercises its authority to modify the common law."[46]  As with other issues of statutory interpretation, the overriding question is whether the Legislature intended to abrogate the common law.[47]  As discussed, this Court has consistently recognized that directors owe fiduciary duties directly to the shareholders of the corporation, both before and after the adoption of the BCA.[48]  This is, of course, compelling evidence that the Legislature did not abrogate those common-law duties.  But even more compelling is a review of the relevant statutory history, which offers critical textual clues in support of this conclusion.[49]

---

[45] *Wold Architects & Engineers v Strat*, 474 Mich 223, 234; 713 NW2d 750 (2006).

[46] *Velez*, 492 Mich at 11-12 (quotation marks and citations omitted).

[47] *Hoerstman Gen Contracting, Inc v Hahn*, 474 Mich 66, 74; 711 NW2d 340 (2006) ("Whether a statutory scheme . . . preempts the common law is a question of legislative intent.").

[48] See *In re Butterfield Estate*, 418 Mich 241, 255-256; 341 NW2d 453 (1983) ("[W]hen a board's refusal to declare a dividend constitutes a breach of its fiduciary duty to the shareholders, this amounts to a breach of trust and is ground for court intervention."); *Thomas*, 363 Mich at 118.

[49] See *Dep't of Talent & Economic Dev v Great Oaks Country Club, Inc*, 507 Mich 212, 227; 968 NW2d 336 (2021) ("A statute's history—the narrative of the statutes repealed or amended by the statute under consideration—properly forms part of its context[.]") (quotation marks, citations, and brackets omitted).

In 1931, the Legislature enacted the General Corporation Act, the predecessor to the BCA.[50] Section 47 of the General Corporation Act codified directors' fiduciary duties to provide, in relevant part:

> The directors of every corporation, and each of them, *in the management of the business, affairs, and property of the corporation*, and in the selection, supervision and control of its committees and of the officers and agents of the corporation, shall give the attention and exercise the vigilance, diligence, care and skill, that prudent men use in like or similar circumstances.
>
> \* \* \*
>
> *Action may be brought by the corporation, though or by a* director, officer, or *shareholder*, or a creditor, or receiver or trustee in bankruptcy, or by the attorney general of the state, *on behalf of the corporation against one or more of the delinquent directors*, officers, or agents, *for the violation of, or failure to perform, the duties above prescribed or any duties prescribed by this act, whereby the corporation has been or will be, injured or damaged*, or its property lost, or wasted, or transferred to one or more of them, or to enjoin a proposed, or set aside a completed, unlawful transfer of the corporate property to one knowing the purpose thereof. *The foregoing shall in no way preclude or affect any action any individual shareholder or creditor or other person may have against any director, officer, or agent for any violation of any duty owed by them or any of them to such shareholder*, creditor, or other person.[51]

Although the statute did not specify *to whom* directors owed their fiduciary duties, the language emphasized above makes clear that the Legislature intended to prescribe

---

[50] 1931 PA 327. Before this act, in regard to domestic corporations, the Legislature provided that "[t]he board of directors shall exercise good faith in the conduct of the affairs of the corporation, and shall do no acts nor pay any salaries or bonuses which would tend to impair the company's business or to destroy the value of any part of its capital stock or securities; and the courts shall have full power to afford the protection provided for herein upon proper application thereto." 1921 PA 84, part 2, ch 3, § 3.

[51] 1931 PA 327, § 47 (emphasis added).

directors' managerial duties performed on behalf of the corporation. Indeed, § 47 allowed for derivative actions seeking redress for injuries *to the corporation* and, at the same time, expressly did not "preclude or affect any action any individual shareholder" may have for a breach of fiduciary duties owed *to the shareholder*. Section 47 did not create a statutory cause of action for any individual shareholder alleging a breach of fiduciary duties owed to shareholders; it merely recognized that direct shareholder actions alleging a breach of those duties may exist independently of the statute.[52]

This statutory language remained intact until the Legislature enacted § 541 of the BCA in 1972.[53] But while that statute continued to recognize directors' fiduciary duties, it no longer included the language from § 47 of the General Corporation Act indicating that directors' breach of their statutory fiduciary duties could be brought derivatively, nor did the statute reference any duties owed to the shareholders that could be enforced through a direct shareholder action.[54] In 1989, the Legislature repealed § 541 and added § 541a in

---

[52] See generally *Bergy Bros, Inc v Zeeland Feeder Pig, Inc*, 415 Mich 286, 292; 327 NW2d 305 (1982) (noting that MCL 450.47, repealed by 1972 PA 284, "enabled a creditor to sue a director *on behalf of the corporation* for a breach of duty *to the corporation*" and thus "has no application in this suit by a creditor *on his own behalf*") (emphasis added).

[53] 1972 PA 284, § 541 (codified as MCL 450.1541).

[54] MCL 450.1541 provided, in relevant part:

(1) A director or an officer shall discharge the duties of his position in good faith and with that degree of diligence, care and skill which an ordinarily prudent man would exercise under similar circumstances in a like position. . . .

(2) An action against a director or officer for failure to perform the duties imposed by this section shall be commenced within 3 years after the cause of action has accrued, or within 2 years after the time when the cause

its stead,[55] but it too does not prescribe any duties owed to the shareholders, nor does it detail the manner in which actions alleging a breach of the prescribed statutory duties are to proceed, either directly or derivatively. Instead, § 541a(1) states that directors shall discharge their duties "[i]n good faith," "[w]ith the care an ordinarily prudent person in a like position would exercise under similar circumstances," and "[i]n a manner [they] reasonably believe[] to be in the best interests of the corporation."

Given this statutory history, we conclude that the Legislature, in enacting the BCA, did not abrogate directors' common-law fiduciary duties owed to the shareholders of a corporation. Had the Legislature created a direct cause of action under § 47 of the General Corporation Act through which individual shareholders could bring their claims alleging a breach of directors' fiduciary duties owed to shareholders, then perhaps an argument could be made that the Legislature, by repealing § 47 and not replacing that statutory action, intended to abrogate common-law actions alleging the same. This scenario would present a difficult question as to whether the Legislature, by not including this now statutory action in the BCA, spoke in "no uncertain terms"[56] and wholly abrogated the common-law duties at issue.

But that is not the case here. The Legislature neither created nor repealed a direct shareholder action for directors' breach of their fiduciary duties owed directly to the shareholders. Absent the creation of such a statutory right or the abrogation of a statutory

---

of action is discovered, or should reasonably have been discovered, by a person complaining thereof, whichever sooner occurs.

[55] 1989 PA 121.

[56] *Velez*, 492 Mich at 11-12 (quotation marks and citations omitted).

20

right that had been codified, there is no textual or other basis to conclude that the Legislature intended to abrogate the common law. Instead, in enacting the BCA, the Legislature simply stripped the language from § 47 of the General Corporation Act delineating between, on the one hand, derivative actions brought on behalf of the corporation under the statute and, on the other hand, direct shareholder actions that could exist independently of the statute. And, with its more recent changes, the Legislature provided that directors must act "in the best interests of the *corporation*."[57] Consequently, the Legislature has never created or codified a direct cause of action for shareholders, and it has never expressly or even impliedly rejected the common-law fiduciary duties running from corporate directors to their shareholders. Thus, none of the changes to § 541a(1) or its predecessor can reasonably be read to abrogate corporate directors' common-law fiduciary duties to their shareholders.[58]

We also disagree with defendants' contention that the BCA sets forth a comprehensive legislative scheme in which the Legislature intended the statutory duties codified in § 541a(1) to supersede and replace all common-law fiduciary duties. "In general, where comprehensive legislation prescribes in detail a course of conduct to pursue and the parties and things affected, and designates specific limitations and exceptions, the Legislature will be found to have intended that the statute supersede and replace the common law dealing with the subject matter."[59] We, however, are not dealing with the

---

[57] MCL 450.1541a(1)(c) (emphasis added).

[58] *Velez*, 492 Mich at 11.

[59] *Wold Architects*, 474 Mich at 233 (quotation marks and citations omitted).

21

same subject matter. Consistent with the statutory history outlined earlier, MCL 450.1541a(1) discusses the standard by which corporate directors are to discharge their managerial duties owed *to the corporation*. It does not inform us about the fiduciary duties that directors owe *to the shareholders*, particularly in a cash-out merger or other sale-of-control transaction, in which the focus of directors shifts away from preserving and furthering the interests of the corporation and moves toward maximizing the sale price of the target corporation for the benefit of its shareholders.[60] In fact, the current statutory language reflects the Legislature's continuing focus on directors' duties owed to the "corporation" rather than to the shareholders.[61] Thus, the Court of Appeals' conclusion that "an action brought under § 541a seeks to redress wrongs to the corporation . . . [and] should generally be brought by the corporation or a shareholder on behalf of the corporation" is not clearly erroneous.[62]

Put simply, § 541a(1) is silent as to the fiduciary duties that corporate directors owe their shareholders. Because the Legislature is presumed to know that such duties exist at common law, we will not infer wholesale abrogation of all common-law fiduciary duties from this silence. Contrary to defendants' argument, § 541a(1) does not provide the sole source of directors' fiduciary duties. MCL 450.1541a(1) only encompasses directors'

---

[60] *Revlon*, 506 A2d at 182.

[61] MCL 450.1541a(1)(c).

[62] *Murphy*, unpub op at 4, citing *Estes v Idea Engineering & Fabricating, Inc*, 250 Mich App 270, 283; 659 NW2d 84 (2002) (stating in dicta that "plaintiffs in § 541a suits typically represent the corporation and bring their suits as derivative actions pursuant to § 492a," MCL 450.1492a).

managerial duties owed to the corporation, leaving the common-law fiduciary duties that directors owe to their shareholders untouched.[63]  Absent a clear legislative intent, we will not presume that the Legislature, in enacting the BCA, exercised its authority to abrogate those common-law duties.

## D. DISTINCTION BETWEEN DIRECT AND DERIVIATIVE SHAREHOLDER ACTIONS

Having recognized the precise fiduciary duties at issue and their source under Michigan common law, we must now determine whether a claim for breach of these fiduciary duties must be brought directly or derivatively.  In framing the distinction between direct and derivative actions under Michigan law, the Court of Appeals stated:

> While corporate directors and officers owe fiduciary duties to the shareholders, "a suit to enforce corporate rights or to redress or prevent injury to the corporation, whether arising out of contract or tort, must be brought in the name of the corporation and not that of a stockholder, officer, or employee." *Michigan National Bank v Mudgett*, 178 Mich App 677, 679; 444 NW2d 534 (1989); see also *Belle Isle Grill Corp v City of Detroit*, 256 Mich App 463, 474; 666 NW2d 271 (2003).  Our Courts, in distinguishing between a direct and derivative shareholder suit, have recognized two exceptions to this general rule where (1) the individual "has sustained a loss

---

[63] This Court has recognized that statutes and common-law rules governing the same *general* subject matter may coexist absent the Legislature's intent to change the latter.  See, e.g., *Wold Architects*, 474 Mich at 234 (explaining that the Legislature's enactment of the since-repealed Michigan arbitration act (MAA), MCL 600.5001 *et seq*., did not abrogate common-law arbitration because "[s]tatutory and common-law agreements to arbitrate have long coexisted," "[n]othing in the MAA indicates that the Legislature intended to change this existing law," and "[w]hen wording the MAA, the Legislature could easily have stated an intent to abrogate common-law arbitration").  Such is the case here.  The statutory duties that directors owe to the corporation under MCL 450.1541a coexist with the common-law fiduciary duties that directors owe to the corporation's shareholders recognized in various judicial decisions.  Had the Legislature intended to abrogate all common-law fiduciary duties, it could have easily done so.

separate and distinct from that of other stockholders generally," *Christner v Anderson, Nietzke & Co, PC*, 433 Mich 1, 9; 444 NW2d 779 (1989) (quotation marks omitted), or where (2) the individual shows a "violation of a duty owed directly to the individual that is independent of the corporation," *Belle Isle Grill*, 256 Mich App at 474; see also *Mudgett*, 178 Mich App at 679-680.[64]

The Court of Appeals correctly recognized that a suit to enforce corporate rights or to redress injury to the corporation is a derivative suit; although it may be brought by the shareholder, the action itself belongs to the corporation.[65]  If a claim is derivative, a shareholder has no standing to sue except on behalf of the corporation.  Further, a shareholder bringing a derivative action must comply with numerous statutory requirements before bringing that action, including making a showing that the corporation has refused to proceed after suitable demand by the shareholder, which plaintiff has undisputedly not done here.[66]  A direct action, on the other hand, belongs to the shareholder; it seeks redress for harm done to the shareholder or to enforce a personal right belonging to the shareholder independently from the corporation.[67]  In other words, when the shareholder suffers the harm or seeks to enforce a personal right, the "general rule" articulated by the Court of Appeals that an action is derivative does not apply.

---

[64] *Murphy*, unpub op at 4.

[65] *Dean v Kellogg*, 294 Mich 200, 207; 292 NW 704 (1940) (explaining that derivative suits seek "to enforce a claim of the corporation," "[a]ny recovery runs in favor of the corporation, for the shareholders do not sue in their own right," and shareholders "derive only an incidental benefit").

[66] MCL 450.1493a.  See also MCL 450.1492a (detailing the criteria that a shareholder must meet before commencing and maintaining a derivative action).

[67] See 19 Am Jur 2d, Corporations, § 1923, p 94.

Therein lies the problem with the general rule-exception framework that Michigan courts have applied to distinguish direct and derivative actions brought by shareholders. By assuming that the claim belongs to the corporation and then looking to whether an exception exists to permit the claim to be brought directly, our courts overlook the fundamental inquiry at the heart of the distinction between direct and derivative shareholder actions: the nature of the wrong alleged by the complaining shareholder.[68] In *Tooley v Donaldson, Lufkin & Jenrette, Inc*, the Delaware Supreme Court stated that the proper analytical distinction between direct and derivative actions "turn[s] *solely* on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?"[69] In clarifying its framework, the Court in *Tooley* rejected its prior caselaw requiring a plaintiff-shareholder seeking to bring a direct claim to allege a "special injury," i.e., "a wrong that is separate and distinct from that suffered by other shareholders, or a wrong involving a contractual right of a shareholder, such as the right to vote, or to assert majority control, which exists independently of any right of the corporation."[70] The *Tooley* Court explained that the

---

[68] *Id*. at 95 ("[I]t is the body of the complaint or the nature of the wrong alleged that determines whether a claim against a corporation is direct or derivative; courts distinguish between direct and derivative claims by shareholders, by looking at the nature of the right claimed to be violated, and the remedy sought."); McLaughlin, § 9:1 ("The distinction between a derivative and direct claim turns on the nature of the wrong alleged in the complaint regardless of the plaintiff's designation.").

[69] *Tooley v Donaldson, Lufkin & Jenrette, Inc*, 845 A2d 1031, 1033 (Del, 2004).

[70] *Id*. at 1035 (quotation marks, citations, and ellipsis omitted).

"special injury" concept can be confusing in identifying the nature of the action and that it improperly limits direct shareholder claims because "a direct, individual claim of stockholders that does not depend on harm to the corporation can also fall on all stockholders equally, without the claim thereby becoming a derivative claim."[71]   As a result, the Delaware Supreme Court in *Tooley* disapproved of the "special injury" concept as a useful tool in analyzing the direct-derivative distinction and instead described the relevant inquiry as follows:

> [A] court should look to the nature of the wrong and to whom the relief should go.  The stockholder's claimed direct injury must be independent of any alleged injury to the corporation.  The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation.[72]

We find persuasive this method of distinguishing between direct and derivative shareholder actions.  Rather than framing the inquiry as a general rule that an action brought by a shareholder is derivative and determining whether any exceptions apply so as to render the action direct, we adopt the framework set forth by the Delaware Supreme Court in *Tooley*, which clearly and concisely captures the pertinent inquiry regarding the nature of the wrong alleged by the complaining shareholder.[73]   This framework is similar to the "exception" to the general rule recognized by the Court of Appeals in *Belle Isle Grill* and

---

[71] *Id*. at 1037.

[72] *Id*. at 1039.

[73] We are not alone in this observation.  See *Keller v McRedmond Estate*, 495 SW3d 852, 876 (Tenn, 2016) (collecting cases adopting *Tooley* as a clear and simple framework to determine whether a shareholder claim is direct or derivative).

*Mudgett*; however, rather than focusing strictly on the duty allegedly breached and asking to whom that duty is owed,[74] the *Tooley* framework streamlines the inquiry by asking (1) who suffered the harm, and (2) who will receive the benefit of any remedy. In answering the first question, the relevant inquiry is: "Looking at the body of the complaint and considering the nature of the wrong alleged and the relief requested, has the plaintiff demonstrated that he or she can prevail without showing an injury to the corporation?"[75] The second question, whether the benefit of any recovery will go to the corporation or the shareholders individually, logically follows from the first.[76]

Our decision in *Christner* does not alter this inquiry. Although this Court in *Christner* agreed with the Court of Appeals' articulation of an aspect of the "special injury" concept—i.e., that " '[a] stockholder may individually sue corporate directors, officers, or other persons when he has sustained a loss separate and distinct from that of other stockholders generally' "[77]—that the Delaware Supreme Court appeared to reject in *Tooley*, our decision in *Christner* did not purport to adopt an explicit or exclusive test for distinguishing between direct and derivative actions. Instead, *Christner* simply recognized one avenue through which a shareholder may bring a direct shareholder action.[78] Further,

---

[74] *Belle Isle Grill*, 256 Mich App at 474; *Mudgett*, 178 Mich App at 679-680.

[75] *Tooley*, 845 A2d at 1036 (quotation marks and citation omitted).

[76] *Id*.

[77] *Christner*, 433 Mich at 9, quoting *Christner v Anderson, Nietzke & Co, PC*, 156 Mich App 330, 344-345; 401 NW2d 641 (1986) (quotation marks and citation omitted).

[78] Indeed, unlike the prior Delaware caselaw rejected in *Tooley*, 845 A2d at 1035, that *required* a plaintiff-shareholder to sustain a "special injury" in order to bring a direct action, our decision in *Christner* does not stand for the proposition that showing a loss separate

we did not hold in *Christner* that a harm suffered by *all* stockholders is necessarily derivative. Thus, the Delaware Supreme Court's rejection of "the concept that a claim is necessarily derivative if it affects all stockholders equally"[79] is not inconsistent with our holding in *Christner*. In any event, our conclusion in *Christner* that the plaintiff-shareholder was permitted to bring a direct action was supported by additional statutory authority,[80] rendering our acceptance of the Court of Appeals' partial articulation of the "special injury" concept obiter dicta.[81] Accordingly, our decision in *Christner* does not prevent us from clarifying the proper analytical distinction between direct and derivative actions, which turns solely on who suffered the alleged harm and who would receive the benefit of any recovery.

In sum, we hold that in order to distinguish between direct and derivative actions brought by shareholders of a corporation in Michigan, courts must ask (1) who suffered the alleged harm, and (2) who would receive the benefit of any remedy recovered. The second question logically follows from the first. If the answer to both questions is the

and distinct from other shareholders generally is the *only* way in which a shareholder may bring a direct action.

[79] *Id*. at 1039.

[80] See *Christner*, 433 Mich at 9-11 (concluding that the plaintiff, a former employee and shareholder of the defendant corporation, was authorized by statute to maintain an individual action alleging that the other shareholder-directors breached their fiduciary duties by misappropriating the corporation's assets during the dissolution process of the corporation) (citations omitted).

[81] *Auto-Owners Ins Co v All Star Lawn Specialists Plus, Inc*, 497 Mich 13, 21 n 15; 857 NW2d 520 (2014) ("Obiter dicta are not binding precedent. Instead, they are statements that are unnecessary to determine the case at hand and, thus, lack the force of an adjudication.") (quotation marks and citation omitted).

corporation, the action is derivative. If the shareholder suffers the harm independent of the corporation and receives the remedy rather than the corporation, the action is direct.

## E. APPLICATION

Applying this framework, we conclude that plaintiff has standing to bring a direct shareholder action against defendants for an alleged breach of their common-law fiduciary duties in handling the Covisint-OpenText merger. As discussed, in the context of a cash-out merger transaction in which the decision to sell the target corporation has been made, directors of the target corporation must disclose to their shareholders all material facts regarding the merger and must discharge their fiduciary duties to maximize shareholder value by securing the highest value share price reasonably available. Plaintiff alleges that defendants breached their fiduciary duties in handling the cash-out merger transaction by negotiating an inadequate and unfair price for outstanding Covisint stock, engaging in self-dealing while arranging the merger, and issuing a materially incomplete and misleading proxy statement that omitted information necessary to enable the shareholders to cast an informed vote. That is, plaintiff challenges the validity and fairness of the merger itself, and any harm resulting from a breach of defendants' fiduciary duties in handling the merger injures plaintiff directly as a shareholder.[82] Indeed, ownership of shares in a corporation

---

[82] See *Rael v Page*, 147 NM 306, 311; 2009-NMCA-123; 222 P3d 678 (2009) ("[A] stockholder who directly attacks the fairness or validity of a merger alleges a direct injury to the stockholders, not the corporation."), citing *Parnes v Bally Entertainment Corp*, 722 A2d 1243, 1245 (Del, 1999) ("In order to state a direct claim with respect to a merger, a stockholder must challenge the validity of the merger itself, usually by charging the directors with breaches of fiduciary duty resulting in unfair dealing and/or unfair price."); *Cohen v Mirage Resorts, Inc*, 119 Nev 1, 19; 62 P3d 720 (2003) ("A claim brought by a dissenting shareholder that questions the validity of a merger as a result of wrongful

are the personal property of the shareholder,[83] and "[a] higher or lower price received by shareholders for their shares in the cash-out merger in no way implicate[s] [the corporation's] interests and causes no harm to the corporation."[84] Instead, the shareholders of the target corporation suffer the harm directly and exclusively.

Further, assuming plaintiff's allegations have merit, any remedy for defendants' breach of their fiduciary duties would flow directly to plaintiff. In a cash-out merger transaction, the target corporation itself does not receive any of the cash that constitutes the merger consideration. Rather, the acquiring corporation delivers the cash directly to the shareholders of the target corporation. Therefore, if there is a discrepancy between the amount the shareholders received and the amount found to be a fair value for their shares, that difference would belong to the shareholders, not the target corporation.

To conclude that plaintiff's claim is derivative would necessarily mean that Covisint was harmed and should recover any remedy. Such a conclusion defies logic because Covisint suffered no harm and, at this point, Covisint is a wholly owned subsidiary of OpenText. The lower courts' holding that plaintiff's claim was derivative failed to appreciate that, once the merger was consummated, plaintiff no longer owned stock in Covisint and that any derivative action belonging to Covisint passed to OpenText;

conduct on the part of majority shareholders or directors is properly classified as an individual or direct claim.").

[83] *Toles v Duplex Power Co*, 202 Mich 224, 229; 168 NW 495 (1918).

[84] *Shenker*, 411 Md at 346-347.

therefore, plaintiff simply could not file a derivative action on Covisint's behalf.[85]  Indeed, labeling plaintiff's claim as derivative would result in a windfall for OpenText, as it would have paid a reduced price for the Covisint shares *and* received a damage award payable to itself as a result of defendants' breach.[86]  This scenario would leave plaintiff with no avenue for relief.[87]

## IV.  CONCLUSION

We hold that corporate directors owe common-law fiduciary duties directly to the shareholders of the corporation and that the BCA did not abrogate those duties.  We further

---

[85] MCL 450.1724(1)(b).  See also McLaughlin, § 9:5 ("Generally, the loss of shareholder status as a result of a merger of the corporation into another corporation or through the dissolution of the corporation deprives the former shareholder of standing to prosecute a derivative claim on behalf of the merged or dissolved corporation.  Any existing derivative claims upon consummation of the merger pass to the surviving corporation in the merger.").

[86] See *Shenker*, 411 Md at 347 ("Were Petitioners required to bring their action derivatively, any recovery would go to the corporation.  Such a result demonstrates the error of labeling Petitioners' action a derivative claim, as Board Respondents retaining control of Laureate, the defendants who allegedly breached their fiduciary duties to the shareholders, would share in any potential recovery.").  See also Kleinberger, *Direct Versus Derivative and the Law of Limited Liability Companies*, 58 Baylor L Rev 63, 90 (2006) (explaining that claims that corporate "management has sold out too cheaply in a merger" are direct claims because "any consideration 'left on the table' would not have benefited the [target] entity" and instead benefited the acquiring entity, which received a reduced price for the shares).

[87] See *Moore v Macquarie Infrastructure Real Assets*, 258 So 3d 750, 757; 2017-264 (La App 3d Cir 12/13/17) ("A shareholder who is victim to such a situation is left with no access to our courts for recourse.  Prior to the merger, such an innocent shareholder could not bring an action given the lack of ripeness of the claim, i.e., the financial harm would have yet to occur.  After the merger, the innocent, now former shareholder is left with no avenue to recover any damages due to a supposed no right of action, because any such suit must be derivative and the corporation no longer exists.  Such a result also violates a strong public policy of a party having its day in court.").

hold that a shareholder who alleges that directors breached their fiduciary duties owed to the shareholder in handling a cash-out merger transaction may bring that claim as a direct shareholder action. We therefore reverse the decision of the Court of Appeals and remand this case to the Oakland County business court for proceedings consistent with this opinion.

Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch